## THE REINA VICTORIA.

(District Court, S. D. New York. March 3, 1924.)

1. **Maritime liens ⬿12—Ship chargeable with supplies furnished crew.**

    A ship is chargeable with bill for goods furnished crew, in absence of proof that prices were exorbitant.

2. **Maritime liens ⬿12—Ship chargeable for water supplied to crew.**

    A ship is chargeable for water supplied to crew.

3. **Maritime liens ⬿9—Ship liable for motor delivery service.**

    Ship was liable to furnishers of food to crew for service of a motor car, where necessary to haul food from grocery shop to pier.

4. **Maritime liens ⬿9—Test as to claims which may be basis of maritime lien.**

    As regards basis for maritime lien, in torts the test is place where act took place, while in cases of contract it is nature of services.

5. **Maritime liens ⬿9—Ship not liable for motorboat service in carrying supplies half mile.**

    Furnisher of food to crew of ship half mile from shore was not entitled to lien for amount paid for motorboat service, where it appeared there were 23 men in crew, and that they could have pulled to pier and back in rowboat.

In Admiralty. Libel by Makris & Milliones against the steamship Reina Victoria. Decree for libelants.

Nicholas Psaki, of New York City, for libelants.
Bernard C. McKenna, of New York City, for claimant.

LEARNED HAND, District Judge. [1, 2] I am satisfied that these supplies were delivered on board the Reina Victoria during the time when she lay on the Red Hook anchorage ground in March and in April. I do not know how much the crew was supplied otherwise, neither did the libelants; but there were some 23 men on board, and although they appear to have been for the greater part quite unnecessary, they had to be fed while they were on board. A total food account for 30 days of some $640, while large, was not extravagant. The ship is chargeable with the bill, in the absence of proof that the prices were exorbitant. She is also chargeable for the water supplied, $40.

[3, 4] There remain three other items, two for a motorboat service, aggregating $208, and one for a motor delivery service from the grocery shop of the libelants to the Brooklyn wharf. As for the motor service, it was a necessary with which the ship should be charged. These libelants did not keep a delivery motor, but had to take their supplies from their Manhattan grocery store, and $64, or $8 a round trip, was a reasonable, and so far as I know a proper, charge for the number of trips that they took. It is true that this was a land service, and it might be argued, though it was not, that it could not be the basis of a maritime lien.

In torts the test is the place where the act took place on which liability depends. Not so in cases of contract, where it is the nature of the services. Here the agreement was to carry the supplies from the land to the ship, and the cost of carriage was a necessary element in getting them to the ship. Suppose, for example, that the libelants had made a price f. o. b. the ship. No one would, I take it, deduct from the price so much as involved the carriage, even on land, from the gro-

cery shop to the ship's side. The service—i. e., the provisioning of the ship—is maritime, though a part of it must be done on land. Similarly ship's repairs might include the cost of carrying men and materials on the land to the ship at a wharf; they would be included in the repairs, and would be protected by the lien. The supplies, to be available, must be transported; their transport is characterized by its purpose which is maritime.

[5] The case comes down, then, to the question of the motorboat service, and on that I am of a contrary opinion. Here were a crew of 23 able-bodied men, with nothing to do but eat and keep the ship clean and trim. The lien is limited to necessary expenses, and will not include obviously extravagant services, for which no master has authority to bind the ship. It is argued to be a necessary of the ship that a motorboat should be hired at the expense of $208 to carry to them $635 of supplies. There is no suggestion that the ship did not have small boats. Every ship by law must carry them, and why it should have been necessary to go to an expense equal to one-third of the whole value of the goods delivered to spare these gentlemen of leisure a trip of half a mile to the wharf and back I confess I do not see.

True, the libelants have paid the money; but the loss must fall somewhere, and why should it fall on the owner? There was no necessity for a motorboat, when an appointment could be made with the crew, so that four men should take a boat and pull it to the pier and back. Even if it had been impossible for the crew to do so, why do it in a motorboat? It nowhere appears that a rowboat was unavailable at the piers. Such carriage de luxe is on the account of the libelants.

I take it that the claimant does not wish to challenge the amount of the items allowed before a commissioner, and I will therefore pass a decree for $740.05, with interest. On the whole, I will allow no costs.