**David M. HALE**

v.

**CO–MAR OFFSHORE CORPORATION,
et al.**

**Civ. A. No. 83–0496.**

United States District Court,
W.D. Louisiana,
Lafayette-Opelousas Division.

July 5, 1984.

Opinion on Denial of Reconsideration
July 26, 1984.

Lynn M. Luker, Adams & Reese, New Orleans, La., for Noble Drilling Corp.

Clarence A. Frost, Faris, Ellis, Cutrone & Gilmore, New Orleans, La., for Anadarko Production Company.

SHAW, District Judge.

## RULING

This matter comes before the Court on the motion of Noble Drilling Corporation for summary judgment in its favor on its cross claim for contractual indemnity from Anadarko Production Company. The plaintiff in this suit, David Hale, alleges that he was injured while working aboard the M/V C Crusader. At the time of this alleged accident, Noble was acting as a drilling contractor for Anadarko on a fixed platform located on the Outer Continental Shelf off the coast of Texas. The M/V C Crusader and her crew were time-chartered to Anadarko by Co-Mar Offshore Corporation to provide supplies for the drilling rig. Hale has brought suit against Co-Mar, a related entity, Noble and Anadarko under the Jones Act and under the doctrine of unseaworthiness. As Hale has requested a jury trial, it must be presumed that he is bringing the Jones Act claim on the "law side" and is pending the maritime claim of unseaworthiness thereto.

The indemnity clause in the Noble-Anadarko drilling contract provides that Anadarko will indemnify and defend Noble against claims brought by employees of Anadarko and its subcontractors. The indemnity obligation runs from Anadarko to Noble without regard to whether Noble was itself negligent. It remains undisputed that this indemnity clause applies to Hale's claim against Noble.[1] Thus, Noble

---

1. Article.17.1 of the drilling contract provides in pertinent part:

 As to any operations contemplated by this contract, [Anadarko] shall indemnify and hold [Noble] harmless from and against all claims, suits or demands (whether or not there be any basis in law or in fact for same and including, but not limited to, those for

will be entitled to defense and indemnity from Anadarko if the clause is otherwise enforceable.

■ Article 32 of the Noble-Anadarko contract provides that the rights and obligations under the agreement will be determined according to Oklahoma law. An agreement in a drilling contract to indemnify an indemnitee against the consequences of its own negligence is valid under Oklahoma law. *See Kelly-Springfield Tire Co. v. Mobil Oil Corp.*, 551 P.2d 671 (Okla.App. 1976). If Texas law were to apply, on the other hand, the indemnity agreement would probably be invalid under Tex.Civ.Stat.Ann. art. 2212b, which provides in pertinent part:

> Except as specified in Section 4 of this Act, a covenant, promise, agreement, or understanding contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water, or mine for any mineral, is void and unenforceable if it purports to indemnify the indemnitee against loss or liability for damages arising from either death or bodily injury to persons, or injury to property, or any other loss, damage, or expense arising from either death or bodily injury, injury to property, or loss, damage, or expense, which is caused by or results from the sole or concurrent negligence of the indemnitee, or an agent or employee of the indemnitee, or an independent contractor who is directly responsible to the indemnitee.

Tex.Civ.Stat.Ann. art. 2212b. Accordingly, Anadarko urges that the contractual choice of Oklahoma law is ineffective because its application here would violate a fundamental policy of the state of Texas against indemnity for an indemnitee's negligence under a drilling contract.

Yet Anadarko notes that there is an initial question as to which jurisdiction's choice-of-law principles will apply to reach this result. Louisiana choice-of-law principles might apply because the parties on the cross-claim are of diverse citizenship and the Court is geographically situated in Louisiana. *Cf. Delhomme Industries, Inc. v. Houston Beechcraft*, 669 F.2d 1049 (5th Cir.1982) (Louisiana choice-of-law rules applied to main demand in diversity action). Or federal choice-of-law rules might apply because the cross-claim is ancillary to a federal-question claim. Texas law as surrogate federal law under the Outer Continental Shelf Lands Act, 43 U.S.C. § 1333, stands as another possibility. *Cf. Gulf Offshore Company v. Mobil Oil Corporation*, 594 S.W.2d 496 (Tex.Civ.App.1979), *aff'd in part, vacated in part on other grounds*, 453 U.S. 473, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1980) (Louisiana law applied to indemnity issues where an OCS platform worker was injured on a crewboat nearby). Anadarko maintains that the rule is the same and that the contractual choice of Oklahoma law is ineffective in this situation regardless of which body of law applies. The Court concludes, however, that Noble's indemnity claim arises out of the performance of a maritime obligation and that it therefore falls within the admiralty jurisdiction. Thus, the critical inquiry focuses not upon Texas law and policy, but upon maritime law and policy.

■ As a general rule, an agreement governing drilling operations on a fixed

bodily injury, illness, disease, death or loss of services, property or wages) brought against [Noble], or in which [Noble] is named as a party defendant, by any employee of [Anadarko] or employee of [Anadarko's] co-lessees, if any, regardless of whether or not any such claim, suit or demand shall arise in whole or in part from any negligent act or omission of [Noble]. [Anadarko] shall defend any and all such claims and suits at its sole expense and shall bear all other costs and expenses related thereto, but may investigate, negotiate and settle any such claim or suit as it deems expedient. Any policy or policies of insurance taken by [Anadarko] to protect it in

whole or in part from any such claim, suit or demand shall be endorsed so as to waive subrogation against [Noble], but only as to such claims for acts or omissions in connection with the work contemplated by this contract.

Article 17.3 of the drilling contract provides in pertinent part:

For the purpose of Article 17, any employee of any subcontractor of [Anadarko] (excluding employees of [Noble] and of [Noble's] subcontractors) shall be deemed to be an employee of [Anadarko], but only as to acts or omissions in connection with performance of operations contemplated by this contract.

offshore platform is not a maritime contract. Such an agreement is usually governed by either state law or state law as surrogate federal law under the Outer Continental Shelf Lands Act.[2] Yet admiralty law recognizes that not all contracts are either strictly maritime or strictly nonmaritime. A "mixed contract" results where the parties agree to perform both maritime and nonmaritime services in the same contract. The separable maritime elements of an otherwise nonmaritime contract are subject to maritime, rather than state, law. Thus, if the injury occurs in the performance of a maritime obligation, the subsidiary indemnity and choice of law provisions will be subjected to scrutiny under maritime law. *See generally* Note, *Contractual Indemnity under Maritime and Louisiana Law,* 43 La.L.Rev. 189, 198–99 (1982).

 In the case at bar, Anadarko agreed to furnish a supply boat under Article 14 and Exhibit C–2 of the drilling contract. An agreement to transport people and supplies in a vessel to and from an offshore drilling rig is a maritime contract. *Ardoin v. Union Oil Company,* 226 F.Supp. 192 (W.D.La.1964). Anadarko therefore undertook a maritime obligation when it agreed to furnish a vessel for transporting supplies to the platform. The plaintiff's alleged injury occurred in the performance of this maritime obligation. Thus, the contractual indemnity obligation arising out of this activity, and the choice of law provision pertaining to this activity, are governed by maritime law.[3]

 Under admiralty law, the law of the state chosen by the parties to govern their contractual rights and duties will be applied unless either (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of the jurisdiction which would provide the rule of decision for the particular issue involved in the absence of an effective contrary choice of law by the parties.[4] Here, Oklahoma has a substantial relationship to these parties because Noble is an Oklahoma corporation. *See Restatement (Second) of Conflict of Laws* § 187, comment f, at 567 (1971). As for public policy considerations, the Court must look to those underlying admiralty law because maritime rules of decision would apply in the absence of a choice of Oklahoma law. An agreement to indemnify an indemnitee against the consequences of his own negli-

**2.** *See Hobbs v. Teledyne Movible Offshore, Inc.,* 632 F.2d 1238, 1240–41 (5th Cir.1980) (Louisiana law applied to indemnity agreement where fixed platform worker was injured while being transferred by rig owner's crane to a crew boat); *Mott v. ODECO,* 577 F.2d 273, 276–78 (5th Cir. 1978) (Louisiana law applied to indemnity agreement where welder was injured on the fixed platform); *Day v. Ocean Drilling and Exploration Company,* 353 F.Supp. 1350, 1352 (E.D.La.1973) (Louisiana law applied to indemnity agreement where platform worker injured on an OCS platform); *Gulf Offshore Company, supra. But cf. Pippin v. Shell Oil Co.,* 661 F.2d 378, 384 (5th Cir.1981) (offshore drilling is maritime commerce for determining maritime status under LSHWCA); *Corbitt v. Diamond M Drilling Co.,* 654 F.2d 329, 332 (5th Cir.1981) (a purchase order relating to oil and gas exploration on an inland drilling barge is a maritime contract).

**3.** *See also Smith v. Pan Air Corp.,* 684 F.2d 1102, 1111 (5th Cir.1982) (the opinion discusses the significance of the place of injury and the func-

tion performed by the injured person in determining the lines of demarcation between maritime and OCSLA jurisdiction); *Hamburg-Amerika Linie v. Gulf Puerto Rico Lines,* 579 F.2d 115, 118 (1st Cir.1978) (the Court held that a stevedoring contract, with its implied warranty of workmanlike performance, was maritime when the claim for indemnity was bottomed on a longshoreman's unseaworthiness action); *In re Dearborn Marine Service, Inc.,* 499 F.2d 263 (5th Cir.1974), *cert. dismissed,* 423 U.S. 886, 96 S.Ct. 163, 46 L.Ed.2d 118 (1975) (the claim of an OCS platform worker killed by platform negligence while aboard a vessel moored nearby was governed by state law as surrogate federal law, but the claims of the crewmembers aboard the same vessel were governed by maritime law).

**4.** *See Restatement (Second) of Conflict of Laws* § 187(2) (1971); *cf. The Bremen v. Zapata Offshore Co.,* 407 U.S. 1, 10, 15, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972) (a choice of *forum* clause is valid unless it is either unreasonable or contrary to a strong public policy of the forum in which suit is brought).

gent act does not violate any fundamental policy of maritime law. *E.g., Corbitt v. Diamond M Drilling Co.*, 654 F.2d 329, 333 (5th Cir.1981). All that is required is that such an agreement be clearly expressed in unequivocal terms. *Id.* Here, the indemnity clause contains a clear and unequivocal expression of the intent to indemnify Noble against the consequences of its own negligence. *Cf. Transcontinental Gas Pipe Line Corporation v. Mobile Drilling Barge*, 424 F.2d 684, 692 (5th Cir. 1970) (the opinion presents a phrase that is strikingly similar to the one in the case at bar as being more than sufficient). Thus, the contractual choice of Oklahoma law is effective. As noted earlier, Noble can enforce the indemnity agreement under Oklahoma law.

Accordingly, the motion of Noble Drilling Company for summary judgment in its favor on its cross-claim for contractual indemnity from Anadarko Production Company is GRANTED.

### ON RECONSIDERATION

Anadarko Production Company moves for reconsideration of the Court's ruling granting Noble Drilling Corporation's motion for summary judgment on its claim for contractual indemnity. For the reasons set forth below, the motion for reconsideration is denied. The Court has expedited disposition of the motion in order to give the parties ample opportunity to pursue this novel issue before the Fifth Circuit. The Court will amend the previously rendered judgment to permit an appeal under Federal Rule of Civil Procedure 54(b).

### The Nature of the Obligation

Anadarko first contends that its obligation to provide a supply boat under Article 14 and Exhibit C–2 of the drilling contract is not maritime in nature, contrary to the Court's earlier holding in this regard. Anadarko seeks to characterize its agreement as a preliminary contract leading to the charter of a vessel. Anadarko argues that its agreement is therefore nonmaritime, just as agreements to make a charter

party or to act as an agent for the procurement of a charter are nonmaritime. *See Christman v. Maristella Compagnia Naviera*, 293 F.Supp. 442, 443–44 (S.D.N.Y. 1968); *The Thames*, 10 F. 848 (S.D.N.Y. 1881).

The Court had examined *Christman, The Thames* and similar cases before rendering its earlier ruling and did not find them controlling. The agreement in the Noble-Anadarko drilling contract is unlike those found in *Christman* and other cases. Anadarko did not agree to make a charter party nor did it agree to act merely as an agent for Noble for the procurement of a charter. Anadarko quite simply and quite directly agreed to furnish a boat for the transport of persons and goods across navigable waters. Such an agreement is clearly maritime. *Ardoin v. Union Oil Co.*, 226 F.Supp. 192 (W.D.La.1964). Anadarko agreed to provide exactly the same service that D & B Boat Rentals, Inc. agreed to perform in the *Ardoin* case.

Anadarko points to the fact that Co-Mar actually performed the maritime service under a time-charter to Anadarko in support of its contention that its drilling contract agreement was merely preliminary to the charter of a vessel. Yet the maritime nature of the contract is not changed by the mere fact that Anadarko chose to discharge its obligation to furnish a supply boat by way of a charter arrangement with Co-Mar. Anadarko could have discharged its contractual obligation just as easily by purchasing its own supply boat to service the offshore platform. In that event, no additional agreement between Noble and Anadarko would have been necessary to put the boat in service under the contract. It is thus clear that the agreement in the contract is not one that is merely preliminary to the charter of a vessel. The agreement in the contract is one to provide a maritime service, and the maritime nature of this agreement is not altered by the chosen manner of discharging the obligation. *Cf. Bertrand v. International Mooring & Marine, Inc.*, 700 F.2d 240, 245 (5th Cir.1983) (employers cannot deny Jones Act

coverage to seamen who meet the *Robison* criteria [*Offshore Co. v. Robison*, 266 F.2d 769 (5th Cir.1959)] by chartering rather than owning vessels).

### Separability of the Maritime Obligation

■ Anadarko next contends that, even if the contract is partially maritime, the maritime indemnity element is inseparable from the nonmaritime elements of the contract and that maritime law therefore cannot govern Noble's indemnity claim. A contractual claim does not fall within the admiralty jurisdiction when the contract is not wholly maritime and when the maritime subject matter cannot be seperated from the nonmaritime elements. Where, however, the maritime subject matter is capable of being divided from the rest and only that part which is maritime is put in issue in the suit, admiralty jurisdiction exists over the contract to that extent. *See, e.g., Flota Maritima Browning De Cuba, Sociadad Anonima v. Snobl*, 363 F.2d 733, 735–36 (4th Cir.), *cert. denied*, 385 U.S. 837, 87 S.Ct. 82, 17 L.Ed.2d 71 (1966); *Berwind-White Coal Mining Co. v. City of New York*, 135 F.2d 443, 447 (2d Cir.1943); *Compagnie Francaise De Navigation A Vapeur v. Bonnasse*, 19 F.2d 777, 779 (2d Cir.1927) (lead case by Judge Learned Hand); *Luckenbach Steamship Co. v. Coast Mfg. & Supply Co.*, 185 F.Supp. 910, 916 (E.D.N.Y.1960); 1 *Benedict on Admiralty*, § 184 at 10–11 (7th ed. 1974). The issue thereafter is whether the maritime subject matter, the indemnity claim arising out of the performance of the maritime obligation, is separable from the nonmaritime elements of the drilling contract.

The Court concludes that the maritime indemnity claim arising out of the performance of the maritime obligation to furnish a supply boat is separable from the nonmaritime elements of the drilling contract. This Court hewed the line of demarcation between maritime law and platform law on

contractual indemnity claims in *Home Insurance Company v. Garber Industries, Inc.*, 588 F.Supp 1218 (W.D.La.,1984) (hereinafter *Breitback*). In *Breitback*, the Court concluded that maritime law will govern the contractual indemnity claim only when the injured party is employed to provide maritime services contemplated by the contract.[1] 588 F.Supp. at 1220. Under this standard, the maritime indemnity obligations and the nonmaritime indemnity obligations are easily separable. *See also* Note, *Contractual Indemnity Under Maritime and Louisiana Law*, 43 La.L.Rev. 189, 198–99 (compatible analysis).

■ The Court will not follow *Luckenbach Steamship Co. v. Coast Mfg. & Supply Co.*, 185 F.Supp. 910 (E.D.N.Y.1960), insofar as it might suggest that the indemnity agreement must expressly distinguish between indemnity arising out of maritime services and indemnity arising out of nonmaritime services before the maritime elements can be found to be separable. *See id.* at 919. Such formalism is not an essential prerequisite to separate adjudication of the maritime elements. The issue of separability turns on function rather than form, for the "substantial question is whether the maritime obligations can be separately enforced [in admiralty] without prejudice to the rest." *Compagnie Francaise De Navigation A Vapeur*, 19 F.2d at 779. Here, the maritime contractual indemnity claims can be separated and tried in admiralty without prejudice to adjudication of the remaining nonmaritime obligations.

Accordingly, the motion for reconsideration by Anadarko Production Company is DENIED.

### AMENDED FINAL JUDGMENT

The Court now amends the judgment in this matter rendered on July 17, 1984 and

---

1. The Court noted some question as to whether maritime law should also apply to the contractual indemnity claim when a platform worker boards a vessel and assists in providing the maritime service. The Court did not resolve

this question, however, because any pronouncement would have been *dicta* on the facts presented in *Breitback*. *See* 588 F.Supp. at 1220 n. 2.

filed on July 19, 1984 to add the following language:

"The Court finds that there is no just reason for delay and directs that judgment be entered under Rule 54(b)."

So Ordered.