**Arnold J. O'DELL and Janice O'Dell**

v.

**NORTH RIVER INSURANCE COMPANY, et al.**

**Civ. A. No. 84–0864.**

United States District Court, W.D. Louisiana, Lake Charles Division.

Aug. 13, 1985.

Richard C. Broussard, Lafayette, La., for plaintiffs.

St. Paul Bourgeois, IV, Lafayette, La., William G. Tabb, III, New Orleans, La., Craig W. Marks, Lafayette, La., and Michael P. Mentz, Metairie, La., for defendants.

## RULING

EDWIN F. HUNTER, Jr., Senior District Judge.

This matter comes before the Court on cross-motions for summary judgment on a cross-claim and third-party demand for contractual indemnity. Plaintiff Arnold O'Dell alleges that he was injured while employed by Food and Services, Inc. as a galley hand aboard a jack-up rig, the "LaSalle," which

was allegedly owned by the Cliffs Drilling Division of Cleveland Cliffs Iron Ore Company at the time of the accident. O'Dell and his spouse have brought suit against Food and Services, Inc. under the Jones Act and against the Cliff Drilling Division of Cleveland Cliffs Iron Ore Company and its insurers [collectively, "Cliffs"] under general maritime negligence principles and the unseaworthiness doctrine. Cliffs has in turn filed a cross-claim against Food and Services, Inc. and a third-party demand against Penn-America Insurance Company [collectively, "F & S"] seeking contractual indemnity and recognition as an additional insured pursuant to a master service agreement between Cliffs and F & S. In their cross-motions, Cliffs seeks summary judgment in its favor enforcing the cross-claim and third party demand and F&S seeks summary judgment dismissing these claims.

Under the master service agreement, F & S agreed to provide catering services to Cliffs pursuant to work orders to be performed on land drilling rigs, drilling barges, jack-up drilling rigs, vessels, platforms or their drilling installations. F & S does not dispute that an agreement to provide catering services for a vessel, such as the "LaSalle," is a maritime contract. *Cf. The Reina Victoria*, 298 F. 765 (S.D.N.Y. 1924) (Learned Hand, J.) (a supplier of food and water to a vessel is entitled to assert a maritime lien for his services because of their maritime nature). F & S also does not dispute that maritime law would apply to a typical contract action arising out of the performance of these maritime services pursuant to the master service agreement. That is, F & S does not quarrel with the general principle recognized in cases such as *Hale v. Co-Mar Offshore Corp.*, 588 F.Supp. 1212 (W.D.La.1984), to the effect that maritime law will apply to the separable maritime elements of a "mixed contract" wherein nonmaritime obligations are also assumed. *See Hale*, 588 F.Supp. at 1215. F & S does urge, however, contrary to Judge Shaw's holding in *Hale*, that the indemnity obligation assumed in the master service agreement cannot properly be considered as subsidiary to the maritime ele-

ments in the contract and that the obligation is therefore governed by Louisiana state law without regard to whether the indemnity obligation arises out of the performance of the maritime elements of the agreement. F & S concludes this facet of its argument with the contention that the indemnity provision involved here would be void and unenforceable under the Louisiana Oilfield Anti-Indemnity Act, La.R.S. 9:2780.

Substantial Fifth Circuit authority supports the position adopted by F & S. The opinions in *Hicks v. Ocean Drilling and Exploration Co.*, 512 F.2d 817 (5th Cir. 1975), *cert. denied*, 423 U.S. 1050, 96 S.Ct. 777 (1976); *Dickerson v. Continental Oil Company*, 449 F.2d 1209 (5th Cir.1971), *cert. denied*, 405 U.S. 934, 92 S.Ct. 942, 30 L.Ed.2d 809 (1972); and *Grigsby v. Coastal Marine Service of Texas, Inc.*, 412 F.2d 1011 (5th Cir.1969), seem to espouse the view that an indemnity obligation in a maritime contract is governed by adjacent state, rather than maritime, law. *See Hicks*, 512 F.2d at 826; *Dickerson* 449 F.2d at 1221; *Grigsby*, 412 F.2d at 1039. Yet other, no less substantial, Fifth Circuit authority supports the contrary position, that an indemnity clause in a maritime contract is controlled by federal maritime, rather than state, law. *See Lirette v. Popich Bros. Water Transport, Inc.*, 699 F.2d 725, 728 n. 11 (5th Cir.1983); *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 332 (5th Cir.1981); *Transcontinental Gas Pipe Line Corp. v. Mobile Drilling Barge*, 424 F.2d 684, 691 (5th Cir.1970). Indeed, one panel has applied this latter rule as "settled precedent." *Corbitt*, 654 F.2d at 332.

■ This district court therefore finds itself in the unenviable position of having to choose between two clearly conflicting lines of Fifth Circuit authority on the same point of law. Fortunately, established principles exist for resolving just this sort of dilemma. It is settled law in this circuit that the inconsistency between two conflicting lines of Fifth Circuit authority must be resolved in favor of the earlier line of cases. *E.g., United States v. Gray*, 751 F.2d 733, 735 (5th Cir.1985). This doctrine

has evolved as a logical extension of the rule that one panel within the circuit may not overrule the opinion of another. *See Alcorn County, Mississippi v. U.S. Interstate Supplies, Inc.*, 731 F.2d 1160, 1166 (5th Cir.1984). Yet this well-established rule of precedence of course prohibits departure only from prior circuit *holdings. See, e.g., Placid Oil Co. v. Federal Energy Regulatory Comm'n*, 666 F.2d 976, 984 (5th Cir.1982). As always, *dicta* by one panel stands as persuasive authority only, although it is entitled to great weight absent a contrary holding in the circuit.

■ With very due respect to the *Hicks, Dickerson* and *Grigsby* courts, this Court is bound under these principles to follow the "settled precedent" of *Lirette, Corbitt,* and *Transcontinental Gas.* The expressions in *Dickerson* and *Grigsby* as to what law should be applied to the indemnity obligations in a maritime contract can be fairly considered only as *dicta* because neither case involved a maritime contract. The indemnity obligations in *Dickerson* arose out of the performance of a nonmaritime drilling contract on a fixed platform. *See* 449 F.2d at 1212, 1221. Similarly, the issues in *Grigsby* centered around a nonmaritime equipment rental agreement. *See* 412 F.2d at 1038. *Hicks* does in fact apply state law to an indemnity obligation in a maritime master service contract pertaining to a Jones Act vessel, a submersible oil storage facility. *See* 512 F.2d at 826. Yet, by the time of the *Hicks* decision, the Fifth Circuit had already held in *Transcontinental Gas* that maritime law governs an indemnity clause in a maritime contract. *See* 424 F.2d at 691. Under the principles set forth before, this Court is bound to follow the earlier holding of *Transcontinental Gas* and must similarly hold that the indemnity provisions pertaining to the maritime contract in this case are controlled by federal maritime, not state, law.

■ Moreover, the Court respectfully suggests that the *Transcontinental Gas* line of cases has generated the better-reasoned rule. The Court can see no reason why maritime law should not govern the indemnity obligations arising out of the performance of a maritime obligation.

Logically, the same law should apply to all of the maritime incidents of a maritime contract. F & S nonetheless urges that the Court should apply the "maritime but local" exception to this general rule, relying in principal part on *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955), and *dicta* in *Grigsby.* Yet the decision in *Wilburn Boat Company* was founded in large part on the tradition of federal deference to extensive state regulation over the insurance industry. *See Wilburn Boat Company,* 348 U.S. at 313–21; 75 S.Ct. at 370–74. Contractual indemnity, on the other hand, is not a matter that has been the subject of complex and extensive state regulation. State legislatures have entered the field on only a piecemeal basis in order to alter settled jurisprudential rules. *Cf.* La.R.S. 9:2780 (prohibition of agreements to indemnify an indemnitee against his own negligence in an oilfield contract); Tex.Civ.Stat. Ann. art. 2212b (same). And, unlike marine insurance, the underlying principles of maritime contractual indemnity are well-established in the jurisprudence. *See generally* Note, *Contractual Indemnity under Maritime and Louisiana Law,* 43 La.L. Rev. 189, 199–208 (1982). Thus, as the states do not have an extensive regulatory interest in maritime contracts of indemnity and as the maritime law is well-developed in this area, no solid basis exists for application of the "maritime but local" doctrine here.

■ To complete the choice-of-law inquiry in this mixed contract case, the Court need further determine only whether the injured party was employed in providing the maritime service contemplated by the contract. *See Hale,* 588 F.Supp. at 1217; *Home Ins. Co. v. Garber Industries, Inc.,* 588 F.Supp. 1218, 1220–21 (W.D.La.1984). On the present motion, neither party disputes that O'Dell was employed as a galley hand aboard the jack-up LaSalle pursuant to the master service agreement between the parties. On the uncontroverted facts, the alleged injury occurred while O'Dell was carrying out the garbage from the galley after the evening meal. Thus, it is

clear that he was employed for the purpose of, and was in fact engaged in, providing the maritime service contemplated by the contract. Thus, as with most cases covered by the *Hale-Garber* rule, the body of law governing the claim of the plaintiff, here a seaman, will be the same body of law that governs the contractual indemnity claim arising of his accident, which in this case is maritime law. *Cf. Hale, supra* (maritime law applied to indemnity claim arising out of injury to seaman); *Garber, supra* (platform law applied to indemnity claim arising out of injury to platform worker engaged in providing platform services). *But cf. Barnes v. Kerr-McGee Corp.*, No. 84–3026, (E.D.La. May 23, 1985) (maritime law applied to indemnity claim arising out of injury to platform worker engaged in providing maritime services at the time of his injury). The Louisiana Oilfield Anti-Indemnity Act therefore does not stand as a bar to the indemnity claim in this case.

As an alternative argument, F & S urges that, even if maritime law applies here, the indemnity clause in the master service contract does not in fact call for indemnification in this situation. The indemnity clause provides in pertinent part:

"[F & S] hereby assumes all liability for costs, losses and damages on account of personal injury to ... [F & S] employees arising out of, incident to, or in connection with or resulting directly or indirectly from, any operations performed under the contract .... [F & S] shall indemnify and hold harmless [Cliffs] ... against any and all claims, demands or suits ... which may be brought against [Cliffs] ... by any employee of [F & S] ... in anywise arising out of, incident to, or in connection with, or resulting directly or indirectly from any operations performed under this Contract, regardless of whether such claims, demands or suits are founded in whole or in part upon alleged sole or concurrent negligence of [Cliffs], or its employees, agents, contractors or invitees, and/or are founded upon defects in equipment or unseaworthy condition of any vessel owned, chartered or used by [Cliffs] (including any defects or unseaworthy conditions which come into existence prior to the date of this Contract)."

Under the uncontroverted facts on these motions, O'Dell allegedly suffered his injury while carrying the garbage out after the evening meal. At the time of his alleged injury, he had left both the galley and the mess area and was walking down an open passageway toward the garbage container. As he stepped over a pipe laying in the passageway, he allegedly stepped on a cable that rolled out from underneath him, causing his injury. F & S contends that it can owe no indemnity on these facts because the placement of the cable did not arise out of the performance of the catering services.

Essentially, F & S urges that the employee's injury must be caused directly by the performance of the catering obligation for an indemnity obligation to arise under the contract. Yet such a restrictive reading of the phrase "in anywise arising out of, incident to, or in connection with, or resulting directly or indirectly from any operations performed under this Contract" would render the remainder of the indemnity clause mere surplusage. The portion of the clause that follows the phrase in question provides for indemnity regardless of whether, *inter alia*, the claim is founded wholly upon the sole negligence of Cliffs, or its employees, agents, contractors or invitees. As these parties are not engaged in the performance of the catering services under the subcontract, the indemnity clause must necessarily encompass claims for injuries that are not caused directly by the performance of the catering services. Otherwise, the reference to these additional potential tortfeasors would be superfluous. Indeed, this basic point is driven home in a part of the clause that may be directly applicable in the instant case. The indemnity provision also covers claims founded upon equipment defects or unseaworthy conditions, regardless of whether the defect or condition came into existence prior to the date of the catering subcontract. This particular portion of the clause demonstrates with certainty that the indemnity obligation is not limited solely to claims for

injuries caused by the performance of the catering services. Rather, it suffices that the F & S employee merely be engaged in the performance of the catering services and that the claim be founded on the fault of F & S, or the sole or concurrent negligence of one of the listed parties, or on the defect or unseaworthiness of the LaSalle. *Accord Mills v. Zapata Drilling Co., Inc.*, 722 F.2d 1170, 1174 (5th Cir.1983) (under Louisiana law, the trial court did not err in enforcing a nearly identical indemnity provision where the subcontractor-indemnitor's employee was killed by the negligent act of an employee of another subcontractor of the contractor-indemnitee). The cases cited by F & S in opposition to this view, *Lanasse v. Travelers Ins. Co.*, 450 F.2d 580 (5th Cir.1971), *cert. denied* 406 U.S. 921, 92 S.Ct. 1779 (1972), and *Hobbs v. Teledyne Movible Offshore, Inc.*, 632 F.2d 1238 (5th Cir.1980), are simply inapposite, as they involve indemnity provisions drafted differently from the one involved in the case at bar.

Accordingly, the motion for summary judgment brought by Food and Services, Inc. is DENIED, and the motion for summary judgment by Cliffs Drilling Company, North River Insurance Company and United States Fire Insurance Company is GRANTED. Counsel for the Cliffs interests shall provide the Court with a form of judgment within ten days of his receipt of this ruling.