Ronald **BOLFA,**

v.

**POOL OFFSHORE COMPANY, et al.**

**Civ. A. No. 84–1900 "L".**

United States District Court,
W.D. Louisiana,
Lafayette-Opelousas Division.

Dec. 18, 1985.

Gary R. Steckler, Lafayette, La., for plaintiff.

Ralph E. Kraft, Lafayette, La., Scott F. Stains, New Orleans, La., for defendants.

## MEMORANDUM RULING

DUHE, District Judge.

This matter arises as a result of injuries sustained by plaintiff Ronald Bolfa while he was employed by Louisiana Offshore Caterers, Inc. ("LOC"), as a galley hand working aboard Pool Offshore Company's ("Pool") submersible drill barge No. 924. Bolfa brought suit against LOC and Pool. The plaintiff now moves for summary judgment on the issue of seaman status, and Pool moves for summary judgment on its cross-claim against LOC for contractual indemnity.

I. *Plaintiff Ronald Bolfa's motion for Summary Judgment*

The test for determining seaman status established in *Offshore Oil Co. v. Robison,* 266 F.2d 769 (5th Cir.1959), remains in force in the Fifth Circuit with slight modification. A maritime worker claiming seaman status must satisfy the following criteria:

(1) He must have a more or less permanent connection with

(2) a vessel in navigation and

(3) the capacity in which he is employed or the duties which he performs must contribute to the function of the vessel, the accomplishment of its mission or its operation or welfare in terms of its maintenance during its movement or during anchorage for its future trips.

*Bernard v. Binnings Const.,* 741 F.2d 824, 827 (5th Cir.1984). Pleadings and admissions have established that the plaintiff was employed by the defendant Louisiana Offshore Caterers, Inc., ("LOC") as a galley hand working aboard Pool Offshore Company's ("Pool") submersible drill barge No. 924 at the time of the accident. The parties admit that the drill barge is a "vessel" under the test, that the vessel was located in navigable waters, and that the plaintiff was within the course and scope of his employment performing his duties aboard the vessel at the time of the accident.

The plaintiff testified at his deposition that LOC's personnel manager assigned him to Pool No. 924 to work as a galley hand. Following instructions from the cook, the plaintiff was disposing of grocery boxes when the accident occurred. Sidney J. Savoie, Pool toolpusher, testified at his deposition that the crews aboard the drill barge included the company man, the toolpusher, the drill crews, and LOC's catering crew. All crew personnel ate and slept in the living quarters of the vessel, and the duties of the galley hand were to cook and clean the kitchen and the living quarters.

Mr. Joseph R. Fontenot, the personnel manager of LOC, stated in his deposition that he hired the plaintiff for a tour of duty to last 28 days. Following the plaintiff's 7 days off, he could have returned to Pool No. 924 for another tour of duty and could follow it to any new locations. LOC ser-

viced Pool No. 924 on at least twelve different locations after the plaintiff's accident. LOC regularly sent catering crews for tours of duty to last 28 days, and they ate, slept, and performed all of their duties aboard Pool No. 924. The catering crews usually returned to the same vessel and followed it to a new location. LOC had been servicing Pool No. 924 for about five years.

Mr. Roland Berque, the Vice President of LOC, testified by deposition that LOC contracted with Pool to provide groceries, manpower, and a crew of 17 persons to clean the vessel. Pool set the terms and regulations for the catering crew to follow. LOC encouraged crew members to return to the same vessel in order to save gasoline expense money.

The plaintiff argues that the deposition testimony establishes that he had a "more or less permanent connection" with the vessel. A movable drilling rig is a "vessel". *Robison*, 266 F.2d at 780. The defendants have admitted that the rig was located in navigable waters at the time of the accident, November 11, 1983. Finally, the plaintiff, working as a galley hand, was "aboard the vessel primarily in an aid of navigation." *See Mahramas v. American Export Isbrandtsen Lines*, 475 F.2d 165, 170 (2nd Cir.1973) (hairdresser aboard crew ship held to be seaman for purposes of enforcement of seaman's remedies against vessel and operator); *Hebert v. California Oil Company*, 280 F.Supp. 754 (W.D.La. 1967) (catering company employee held to be doing work that contributed to mission of drill barge on which he was employed); *Sims v. Marine Catering Service, Inc.*, 217 F.Supp. 511 (E.D.La.1963) (plaintiff employee of catering company serving aboard motor vessel used as quarter boat for drilling company employees engaged in offshore oil development activities held to be permanently attached to vessel and duties as messman contributed to function of vessel or to accomplishment of its mission); *Arnold J. O'Dell v. North River Insurance Company*, 614 F.Supp. 1556 (W.D.La.1985) (galley hand employee of catering contrac-

tor injured aboard jackup rig held to be seaman).

The plaintiff maintains that although he was on the vessel for only three days before the accident, he was assigned for a 28 day shift and would have returned for a subsequent tour of duty but for his injury. Regarding the permanent assignment test, the Fifth Circuit has recognized that the word "permanent" has never been assigned a literal interpretation under the Jones Act and should be used as "an analytical starting point instead of a self-executing formula." *Davis v. Hill Engineering, Inc.*, 549 F.2d 314, 327 (5th Cir.1977).

■ In opposition LOC asserts that seaman status is ordinarily a question for the trier of fact. *Longmire v. Sea Drilling Corp.*, 610 F.2d 1342 (5th Cir.1980). Summary judgment is proper on the question of seaman status only where the underlying facts are undisputed and the record reveals no evidence from which reasonable persons might draw conflicting inferences on any of the elements of the seaman test. *Bernard*, 741 F.2d at 838. LOC argues that a genuine issue of material fact exists concerning the "permanent attachment" element of the test. The plaintiff was aboard the vessel only three days when the accident occurred. Although he was assigned to work aboard the vessel for a 28 day work shift, it cannot be said with substantial certainty that the plaintiff would have returned to this same drill barge at the expiration of his first work shift. In addition, the plaintiff did not sign any type of work contract that would restrict his job duties to Pool No. 924.

■ The facts, however, clearly establish that the plaintiff did have a "more or less permanent connection" with the vessel and that he is a seaman. Accordingly, the plaintiff's motion for summary judgment on the issue of seaman's status is granted.

## II. *Pool Offshore Company's Motion for Summary Judgment*

Pool moves for summary judgment on its cross-claim against Louisiana Offshore Ca-

terers for contractual indemnity. Pool premises its motion on the following assumptions: (1) that Pool has acquired the assets and liabilities of Livingston Oilwell Service, Inc., including Livingston Drill Barge No. 24 and the contract pertaining to the catering services aboard that drilling barge; (2) that the indemnity clause within the contract between Livingston Oilwell Service, Inc. and Louisiana Offshore Caterers, Inc. provides them with contractual indemnity for any sums for which they may be held liable, arising out of the injury and subsequent lawsuit filed by Ronald Bolfa; and (3) that the contract between Louisiana Offshore Caterers, Inc. and Livingston Oilwell Service, Inc. and the indemnity provisions within that contract are governed by maritime law. This court has already found that the plaintiff is a seaman.

LOC provided catering service to Pool pursuant to a contract between LOC and Pool's predecessor in interest, Livingston Oilwell Service, Inc. ("Livingston"), dated June 26, 1979. Pool maintains that on September 30, 1982, Livingston assigned all of its assets to Pool, and Pool assumed all of Livingston's liabilities. Pool asserts that it acquired as an asset the contract with LOC and Livingston Drilling Barge No. 24. Pool submits a Certificate of Documentation showing that Pool now owns Livingston Drill Barge No. 24, which has been renamed Pool Drilling Barge No. 924.

LOC asserts that this Certificate of Documentation, which proves Pool owns Livingston Drill Barge No. 24, fails to indicate precisely how Pool obtained the barge. In addition the document does not reveal who owned the barge during the interim between the date of the assignment, September 30, 1982, and the date the vessel was documented, January 21, 1983.

■ Under the contract, LOC agreed to provide food, supplies and manpower, to prepare and serve meals, and to maintain the kitchen, dining and living quarters in a neat and clean condition. Pool asserts that furnishing meals and cleaning the kitchen and living quarters contributes to the mis-

sion of the vessel. The contract further provides members of the crew of the vessel, the cook, and the galley hand. Since the contract provides for members of the crew and for services necessary for the goal of the vessel, the contract is a maritime contract. *See Reina Victoria*, 298 F. 765 (S.D.N.Y.1925) (supplier of food and water to vessel entitled to maritime lien for services); *Kossick v. United Fruit Company*, 365 U.S. 731, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961) ("without a doubt a contract for hire either of a ship or of the sailors and officers to man her is within the admiralty jurisdiction"). LOC argues that the contract is a "mixed contract" since it requires the Contractor to purchase supplies and employ personnel. As a mixed contract, maritime law would govern only the maritime subject matter. The contract, however, is clearly a maritime contract rather than a mixed contract.

The indemnity portion of the contract provides, as follows:

Contractor [LOC] further agrees to protect, indemnify and hold harmless, Company, [Pool] its agents, directors, officers, and employees, and servants or companies for whom Company is performing operations from and against any and all claims, demands, suits, and causes of action of every kind and character which may be brought against them (directly or indirectly) by any employee of the contractor or the legal representative of heirs of such employee, including any person judicially determined to be an employee of the Contractor, on account of personal injury, illness, disease, death, or loss of services or loss of or damage to property and any wise arising out of or incident to the work to be performed under this contract and even though occasioned brought about or caused in whole or in part by the negligence of Company, its agents, directors, officers, employees, servants, companies for whom Company is performing operations or by the unseaworthiness of any vessel.

Pool argues that maritime law governs the indemnity clause in this maritime contract. *See Corbitt,* 654 F.2d at 332 (maritime law allows indemnity contracts); *Roberts v. Williams-McWilliams,* 648 F.2d 255, 264 (5th Cir.1981) (general maritime law governs indemnity clause in maritime contract).

In *O'Dell v. North River Insurance Co.,* 614 F.Supp. 1556 (W.D.La.1985), Judge Hunter found that a caterer's employee who was working as a galley hand on a jackup drilling rig was a seaman. The court decided additionally that the indemnity contract between the shipowner and the catering company was maritime in nature, that maritime law governed the indemnity provision, that the Louisiana Anti-Indemnity Statute was inapplicable, and that the contract language gave rise to indemnity. Nearly identical to the indemnity provision between Pool and LOC, the indemnity contract in *O'Dell* provided for the sole or concurrent negligence of the shipowner or for the unseaworthiness of any of the shipowner's vessels.

Judge Hunter acknowledged the existence of two conflicting lines of Fifth Circuit authority on the issue of whether maritime law governs an indemnity clause in a maritime contract and followed the earlier line of cases: *Lirette v. Popich Brothers Water Transport,* 699 F.2d 725, 728 n. 11 (5th Cir.1983); *Corbitt v. Diamond M Drilling Co.,* 654 F.2d 329, 332 (5th Cir. 1981); *Transcontinental Gas Pipeline Corp. v. Mobile Drilling Barge,* 424 F.2d 684, 691 (5th Cir.1980). *Lirette, Corbitt,* and *Transcontinental Gas Pipeline* all hold that maritime law governs an indemnity clause in a maritime contract. LOC argues that since the Fifth Circuit has not clarified the issue, conflicting inferences could be drawn such that a motion for summary judgment is improper.

No party disputes that the plaintiff was employed as a galley hand aboard the Pool rig. The facts show that the alleged injury occurred while the plaintiff was carrying out the garbage. Thus, it is clear that he was employed for the purpose of, and was in fact engaged in providing the maritime service contemplated by the contract. Accordingly, the indemnity provision in the maritime contract is governed by maritime law.

Pool next asserts that LOC's duty to indemnify it includes costs and attorney's fees. The specific contract provision states, as follows:

> Contractors, shall defend all suits brought upon any claim, demand, or cause of action covered by this provision and pay all costs and expenses incidental thereto, but the Company shall have the right, at its option, to participate at its own expense in the defense of any such suit without relieving the Contractor of any obligation hereunder.

A contract to hold harmless and to indemnify, if applicable, includes payment of costs and attorney's fees incurred by the indemnitee. *Olsen v. Shell Oil Co.,* 595 F.2d 1099, 1103 (5th Cir.1979). LOC cites *Weathersby v. Conoco Oil Co.,* 752 F.2d 953, 959, (5th Cir.1984), for the proposition that Pool cannot recover attorney's fees and costs. *Weathersby* says that under a "general indemnity agreement," the indemnitee has no right to recover legal fees. Pool and LOC, however, had a specific indemnity agreement, and Pool is therefore entitled to recover costs and attorney's fees. Accordingly, Pool's motion for summary judgment on its cross-claim against LOC for contractual indemnity is granted.