563 So.2d 248 (1990)
Craig A. RODRIGUE and Martha Rodrigue
v.
Elery J. LeGROS and Mobil Exploration & Producing North America, Inc.
No. 89-C-2828.
Supreme Court of Louisiana.
June 4, 1990.
Dissenting Opinion June 19, 1990.
Rehearing Denied June 28, 1990.
*249 Richard S. Vale, Jr., Virgil A. Lacy, III, Blue, Williams, Buckley, Metairie, for Craig Rodrigue, plaintiff-applicant.
Mark A. Lowe, Lafayette, for Mobil Exploration, defendant-respondent.
George D. Ernest, III, Lafayette, for Elery J. LeGros, defendant-respondent.
Norval J. Rhodes, Houma, for Elery J. LeGros, defendant-respondent.
*250 DENNIS, Justice.[*]
In this maritime personal injury case brought in state court pursuant to the savings to suitors clause, 28 U.S.C. § 1333(1), we must determine the validity and scope of an indemnity provision in a contract providing for the drilling of an oil well from a vessel in navigable waters. The plaintiff in this action, an employee of the third party defendant-indemnitor, was injured while engaged in his employment as a result of alleged negligence of the defendant-indemnitee that was not related to the contract. The third-party defendant-indemnitor and its insurer argue that the Louisiana Oilfield Anti-Indemnity Act, La.R.S. 9:2780, prohibits indemnity in this situation, and they alternatively claim that the fault of the indemnitee must arise out of the contract work for the injury to be considered one "resulting directly or indirectly" from the contract. Because we conclude that application of the Louisiana statute would interfere with the uniform features of the federal maritime law in violation of the federal constitution, and that an injury to an employee engaged in the contract work results from the work for the purposes of this contractual indemnity provision, we reject both of the indemnitor's contentions and affirm the judgment of the courts below.

Facts
Two "R" Drilling Company and Mobil Exploration & Producing Southeast entered into an agreement that Two "R" would provide Mobil with equipment and personnel for the drilling of an oil well from a vessel located on navigable waters in White Lake in Vermilion Parish. Under the contract, Two "R" was to provide a drilling rig and, inter alia, two crew boats and captains. As is standard in the offshore oil industry, the contract contained reciprocal indemnity agreements that sought to make each contracting party ultimately responsible for injuries to its own employees. The section pertinent to this case provided:
To the extent permitted by applicable law, and except as may otherwise be specifically provided herein, Contractor [Two "R"] shall defend, protect, indemnify and save Company [Mobil], its co-lessees and joint interest owners, their respective parent and/or affiliated companies and their respective employees, servants and agents, harmless against any and all claims, demands, causes of action and judgments of every kind and character, including indemnity claims, court costs and attorney's fees, arising directly or indirectly, by law, tort or contract, in favor of any person on account of personal injuries to or death of any employee, servant or agent of Contractor or any sub-contractor of Contractor, or damage to or loss of property of Contractor, any subcontractor, or their respective employees, servants or agents, occurring, growing out of, incident to, or resulting directly or indirectly from the Work, whether such loss, damage, injury, death or liability arises from or is contributed to by the fault or negligence in any form of Company, or its employees, servants or agents, or whether due to the imperfection of any material provided by Company or the premises themselves, whether latent or patent, or for any other cause whatsoever. This indemnification shall not be limited to or by the amounts or kinds of insurance carried by, or required to be carried by, Contractor.
A substantially identical paragraph protected Two "R" from claims by Mobil employees. The contract contained no choice of law clause.
While servicing the drilling rig pursuant to the contract, the Two "R" crewboat M/V PRISCILLA ANN collided with the M/V MISS SUPERIOR 77, a vessel owned and operated by Mobil. As a result of the collision, Craig Rodrigue, the captain of the Two "R" vessel and a Two "R" employee, was injured. The Mobil vessel was not engaged in work related to the drilling involved in the contract between Two "R" and Mobil. For the purposes of this motion *251 for summary judgment, Mobil concedes that Elery LeGros, its employee and the captain of the M/V MISS SUPERIOR 77, negligently caused the collision.
Rodrigue brought suit against Mobil and LeGros. He alleged that the collision was caused solely by the negligence of Mobil and its employee LeGros. Mobil thereupon filed a third-party demand against Two "R" and its insurer, in which it sought indemnity and defense from Two "R" and its insurer pursuant to the provisions of the drilling contract. Two "R" filed a cross-claim seeking reimbursement of the maintenance and cure it had paid to Rodrigue. Both companies filed motions for summary judgment. After several hearings, the trial court ultimately denied Two "R"'s motion and dismissed its cross-claim with prejudice, and it rendered judgment in favor of Mobil requiring Two "R" to indemnify Mobil and to pay the costs and legal fees incurred by Mobil in defending the suit. Two "R" appealed suspensively, and the court of appeal affirmed. The appeals court found that the contract language required Two "R" to indemnify Mobil for Rodrigue's claim even though Mobil's employee was not engaged in work under the contract at the time of the accident. Rodrigue v. LeGros, 552 So.2d 703 (La.App. 3rd Cir. 1989). Upon Two "R"'s application, we granted writs. 556 So.2d 1272 (La.1990).

What Law Governs
The parties concede, and the United States Fifth Circuit Court of Appeals has consistently held, that a contract for oil and gas drilling aboard a vessel on navigable waters is a maritime contract. Theriot v. Bay Drilling Corp., 783 F.2d 527 (5th Cir.1986); Corbitt v. Diamond M. Drilling Co., 654 F.2d 329 (5th Cir.1981); Transcontinental Gas Pipe Line Corp. v. Mobile Drilling Barge Mr. Charlie, 424 F.2d 684 (5th Cir.1970); but see Lewis v. Glendel Drilling Co., 898 F.2d 1083 (5th Cir. 1990) (applying the rule but questioning its persuasiveness). Suits on maritime contracts arise under the federal admiralty jurisdiction and thus call for the application of substantive federal maritime law. Kossick v. United Fruit Co., 365 U.S. 731, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961); The Orleans, 11 Pet. 175, 9 L.Ed. 677 (1837); T. Schoenbaum, Admiralty and Maritime Law § 3-10 (1987). Since they are ancillary to the maritime obligations created by the contracts, indemnity agreements contained in these contracts are likewise governed by maritime law absent a valid choice of law clause. Angelina Cas. Co. v. Exxon Corp., 876 F.2d 40 (5th Cir.1989); Stoot v. Fluor Drilling Servs., 851 F.2d 1514 (5th Cir.1988); Lefler v. Atlantic Richfield Co., 785 F.2d 1341 (5th Cir.1986); Theriot v. Bay Drilling Corp., supra; Corbitt v. Diamond M. Drilling Co., supra; Transcontinental Gas Pipe Line Corp. v. Mobile Drilling Barge Mr. Charlie, supra. Except for those in towage contracts, see Bisso v. Inland Waterways Corp., 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 911 (1955), indemnity provisions in maritime contracts are valid and enforceable. Sun Oil Co. v. Dalzell Towing Co., 287 U.S. 291, 53 S.Ct. 135, 77 L.Ed. 311 (1932); Lefler v. Atlantic Richfield Co., supra. Two "R" urges, however, that Louisiana's strong interest in enforcing the Oilfield Anti-Indemnity Act, La.R.S. 9:2780, requires that the Act be applied to invalidate the indemnity provision in this contract. We must therefore determine whether the state statute may be applied in derogation of the substantive maritime law.
Article III, section 2 of the United States Constitution grants to the federal courts jurisdiction in all "cases of admiralty and maritime jurisdiction." This constitutional language has been construed to provide the federal government not only judicial competence to decide maritime cases, but also the power to determine, whether by statute or judicial decision, what the substantive maritime law shall be. Romero v. International Terminal Operating Co., 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959); T. Schoenbaum, supra, § 3-1; G. Gilmore & C. Black, The Law of Admiralty § 1-16 (2d ed. 1975); D. Robertson, Admiralty and Federalism 136 (1970). In Chelentis v. Luckenbach S.S. Co., 247 U.S. 372, 38 S.Ct. 501, 62 L.Ed. 1171 (1918), the Supreme Court was called upon to determine whether a seaman could bring a common law *252 negligence action based upon New York law against his employer, rather than being relegated to a maritime law action for maintenance and cure and unseaworthiness. In holding that New York law could not apply, the Court made explicit the rule that had been implicit in Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086 (1917):
[N]o state has power to abolish the well-recognized maritime rule concerning measure of recovery, and substitute therefor the full indemnity rule of the common law. Such a substitution would distinctly and definitely change or add to the settled maritime law; and it would be destructive of `the uniformity and consistency at which the Constitution aimed on all subjects of a commercial character affecting the intercourse of the states with each other or with foreign states.'
247 U.S. at 382, 38 S.Ct. at 503, 62 L.Ed. at 1176, quoting Southern Pac. Co. v. Jensen, supra.
The Court went on to hold in later cases that the constitutional policy of uniformity in maritime law even prevented Congress from calling for the application of state workers' compensation laws by federal statute. Washington v. W.C. Dawson Co., 264 U.S. 219, 44 S.Ct. 302, 68 L.Ed. 646 (1924); Knickerbocker Ice Co. v. Stewart, 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834 (1920). These cases established the general rule that states may not apply their own substantive law to cases falling within the maritime jurisdiction when the application of such laws would destroy the uniform and consistent nature of the substantive federal maritime law. The Court has continued to apply this rule. See, e.g., Kossick v. United Fruit Co., 365 U.S. at 741, 81 S.Ct. at 894, 6 L.Ed.2d at 62-63 (federal rule validating oral contract of employment applied); Southwestern Sugar & Molasses Co. v. River Terminals Corp., 358 U.S. 811, 79 S.Ct. 38, 3 L.Ed.2d 55 (1959) (applying maritime law rather than state law to towage contract); Bisso v. Inland Waterways Corp., 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 911 (1955) (same); Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953) (applying maritime rule of comparative negligence rather than state rule of contributory negligence); Robins Dry Dock & Repair Co. v. Dahl, 266 U.S. 449, 45 S.Ct. 157, 69 L.Ed. 372 (1925) (maritime rule on standard of care applied rather than state rule); but cf. Markzannes v. Bermuda Star Line, Inc., 545 So.2d 537 (La.1989) (per curiam); Kassapas v. Arkon Shipping Agency, Inc., 485 So.2d 565 (La. App. 5th Cir.), writ denied, 488 So.2d 203, cert. denied, 479 U.S. 940, 107 S.Ct. 422, 93 L.Ed.2d 372 (1986) (admiralty procedural rule of forum non conveniens not applicable in state courts).
Despite the Jensen-Chelentis rule, there are situations in which state law may be applied to facts arising under maritime jurisdiction. Jensen itself recognized that states could, under the then-prevailing interpretation of the maritime law, provide remedies for wrongful death. 244 U.S. at 216, 37 S.Ct. at 529, 61 L.Ed. at 1098. In Western Fuel Co. v. Garcia, 257 U.S. 233, 42 S.Ct. 89, 66 L.Ed. 210 (1921), the Court held that the statutory limitations period of a state wrongful death act could be applied in an admiralty court. The Court stated:
The subject is maritime and local in character, and the specified modification of or supplement to the rule applied in admiralty courts when following the common law will not work material prejudice to the characteristic features of the general maritime law, nor interfere with the proper harmony and uniformity of that law in its international and interstate relations.
257 U.S. at 242, 42 S.Ct. at 90, 66 L.Ed. at 214.
This "maritime but local" exception was also applied in the compensation field. In the case of a carpenter injured while working on a partially completed vessel in a dock, the court noted that while the injury occurred on navigable waters, the employment contract was not maritime. Finding that state compensation law could apply, the Court stated, "[A]s to certain local matters, regulation of which would work no material prejudice to the general maritime law, the rules of the latter might be modified or supplemented by state statutes." *253 Grant Smith-Porter Ship Co. v. Rhode, 257 U.S. 469, 42 S.Ct. 157, 66 L.Ed. 321 (1922); see also Sun Ship, Inc. v. Pennsylvania, 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980); State Industrial Comm'n v. Nordenholt Corp., 259 U.S. 263, 42 S.Ct. 473, 66 L.Ed. 933 (1926); Great Lakes Dredge & Dock Co. v. Kierejewski, 261 U.S. 479, 43 S.Ct. 418, 67 L.Ed. 756 (1923). In subsequent cases, the Court has also allowed the application of state law to the regulation of marine insurance, Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955); Maryland Cas. Co. v. Cushing, 347 U.S. 409, 74 S.Ct. 608, 98 L.Ed. 806 (1954), and sea-to-shore water pollution, Askew v. American Waterways Operators, Inc., 411 U.S. 325, 93 S.Ct. 1590, 36 L.Ed.2d 280 (1973).
Despite this multitude of cases involving the applicability of state law in maritime situations, the Court has developed no clear test for determining when such application is appropriate and when it violates the constitution. G. Gilmore & C. Black, supra, § 6-61. Instead, the Court has generally stated only its conclusion as to whether the application of state law was permissible, and these conclusions have not always been theoretically consistent. G. Gilmore & C. Black, supra, § 1-17. In the absence of an explicit test, scholars have suggested various methods of reconciling the cases and analyzing new situations. One of the first suggestions was that state law could be applied to fill "gaps" in the maritime law. Under this theory, if the maritime law lacked a rule on a particular subject, then the court could apply a state rule, but the Court ultimately labelled this "a subtlety which we think does not merit judicial adoption." Just v. Chambers, 312 U.S. 383, 391, 61 S.Ct. 687, 693, 85 L.Ed. 903, 909 (1941); cf. D. Robertson, supra, at 223-24; Currie, Federalism and the Admiralty: "The Devil's Own Mess," 1960 Sup.Ct.Rev. 158, 167-68.
The more recent cases suggest a sort of choice of law interest analysis, in which the nature of the state interest in applying its own law is compared with the federal interests in applying the federal rule and maintaining uniformity in the general maritime law. As Justice Harlan phrased it, the process is "one of accommodation, entirely familiar in many areas of overlapping state and federal concern, or a process somewhat analogous to the normal conflict of law situation where two sovereignties assert divergent interests in a transaction as to which both have some concern." Kossick v. United Fruit Co., 365 U.S. at 739, 81 S.Ct. at 892, 6 L.Ed.2d at 63; cf. Hess v. United States, 361 U.S. 314, 330, 80 S.Ct. 341, 347, 4 L.Ed.2d 305, 312 (1960) (Harlan, J., dissenting); Currie, supra, at 168-69. This has been called a "reverse-Erie" test, because it is in some ways the converse of the test formulated in Byrd v. Blue Ridge Rural Elec. Coop., 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958) to determine the applicability of federal procedural rules in diversity cases under Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). See Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 145, 108 S.Ct. 1684, 1691, 100 L.Ed.2d 127, 135 (1988); Offshore Logistics, Inc. v. Tallentire, 477 U.S. 207, 222-23, 106 S.Ct. 2485, 2494, 91 L.Ed.2d 174, 190 (1986). As the author of the only treatise on the relationship between state law and federal maritime law has explained the process, courts balance the "federal interest against the countervailing state interests in regulating local activity and in providing relief to its citizens from personal injury impairment." D. Robertson, supra, at 195. Because this analytical approach accomodates the federal interests in uniformity of the maritime law and application of the federal rule and the state interest in applying its own law to activities within its borders, we will use it to determine what law should be applied.
The intent and policy of the Louisiana legislature in enacting the Oilfield Anti-Indemnity Act is expressly set forth in the Act itself:
The legislature finds that an inequity is foisted on certain contractors and their employees by the defense or indemnity provisions, either or both, contained in *254 some agreements pertaining to wells for oil, gas, or water, or drilling for minerals which occur in a solid, liquid, gaseous, or other state, to the extent those provisions apply to death or bodily injury to persons. It is the intent of the legislature by the Section to declare null and void and against public policy of the state of Louisiana any provision in any agreement which requires defense and /or indemnification, for death or bodily injury to persons, where there is negligence or fault (strict liability) on the part of the indemnitee, or an agent or employee of the indemnitee, or an independent contractor who is directly responsible to the indemnitee.
La.R.S. 9:2780(A).
The purpose of the legislature, and thus the policy interest of the state, is to protect certain contractors, namely those in oilfields, from being forced through indemnity provisions to bear the risk of their principals' negligence. Meloy v. Conoco, Inc., 504 So.2d 833, 838 (La.1987). This is an exception to general Louisiana contract law that allows a principal to be indemnified against his own negligence so long as that intent is clearly expressed. Soverign Ins. Co. v. Texas Pipe Line Co., 488 So.2d 982 (La.1986).
The federal interest at stake is the uniformity of both the maritime law in general and the treatment of indemnity provisions specifically. The modern justification for the federal admiralty jurisdiction is the "important national interest in uniformity of law and remedies for those facing the hazards of waterborne transportation." Foremost Ins. Co. v. Richardson, 457 U.S. 668, 677, 102 S.Ct. 2654, 2659, 73 L.Ed.2d 300 (1982). This interest in the uniformity of maritime commercial law has been compared with the similar federal interest in uniformity in matters affecting interstate commerce. Southern Pac. Co. v. Jensen, 244 U.S. at 216-17, 37 S.Ct. at 529, 61 L.Ed. at 1099. While the uniformity interest is minimal in many tort cases due to the fortuitous nature of accidental injuries and the strong state interest in providing redress for injuries, this interest is at its zenith when dealing with maritime contracts, which constitute actual commerce. Kossick v. United Fruit Co., 365 U.S. at 739-41, 81 S.Ct. at 892-94, 6 L.Ed.2d at 63-64; cf. D. Robertson, supra, at 242. Those who engage in maritime commercial activity expect the application of the uniform federal maritime law; "in the typical case the transaction will be interstate, the interests commercial, and the consequent exclusion of state law clear." D. Robertson, supra, at 196.
Comparing Louisiana's interest in protecting state contractors with the federal maritime interest in uniformity in commercial transactions, we conclude that the maritime rule should prevail here. We reach this conclusion for several reasons. First, unlike the fields of wrongful death or workers' compensation, the area of indemnity agreements has never been thought to be a special legislative province of the states. Instead it has generally been governed by common law rules. A federal district court, considering the precise issue before us, succinctly stated:
Contractual indemnity ... is not a matter that has been the subject of complex and extensive state regulation. State legislatures have entered the field on only a piecemeal basis in order to alter settled jurisprudential rules. And, unlike marine insurance, the underlying principles of maritime contractual indemnity are well established in the jurisprudence. Thus, as the states do not have an extensive regulatory interest in maritime contracts of indemnity and as the maritime law is well-developed in this area, no solid basis exists for application of the "maritime but local" doctrine here.

O'Dell v. North River Ins. Co., 614 F.Supp. 1556, 1559 (W.D.La.1985) (citations omitted).
Because indemnity has not been considered an area subject to overriding state interests, the federal admiralty courts have developed a well-articulated set of jurisprudential rules governing indemnity in maritime contracts. See Trade, The Texas and Louisiana Anti-Indemnity Statutes as Applied to Oil and Gas Industry Offshore Contracts, 24 Houston L.Rev. 665 (1987); *255 Note, Contractual Indemnity under Maritime and Louisiana Law, 43 La.L.Rev. 189 (1982). These rules reflect the importance of certainty and uniformity in the area of commercial relations. This can be contrasted with the vast majority of the "maritime but local" cases, in which the former absence of a federal right of recovery for those killed or injured at sea may have influenced the courts in allowing the application of state law. G. Gilmore & C. Black, supra, § 6-61.
Another consideration favoring application of maritime law to this contract is that the significant events giving rise to this litigation were all rooted in maritime commerce. The contract was a maritime contract, and the injuries to the plaintiff in the main demand were the result of a collision between vessels, a classic maritime tort. Since the state of Louisiana cannot legislate regarding the substance of the main demand, there is little reason to apply its legislation to the substance of a claim ancillary to that main demand. Although the state has an interest in protecting Louisiana contractors, the contractor here has effectively stepped outside Louisiana law and into the domain of maritime commerce, so Louisiana's interest is not truly hampered by the application of the maritime rule. In an analogous situation, Judge Rubin concluded that maritime law governed a shipowner's right to noncontractual indemnity from a tortfeasor for the shipowner's obligation to pay a seaman maintenance and cure. Richardson v. St. Charles-St. John the Baptist Bridge & Ferry Auth., 284 F.Supp. 709, 714 n. 7, 1968 A.M.C. 1485 (E.D.La.1968).
Finally, general principles of freedom of contract suggest that the indemnity provision should be upheld. As we have already noted, the federal interest in uniformity is at its greatest in cases dealing with maritime commerce. Furthermore, the Supreme Court has stated that when choosing whether state law or maritime law will apply to a contract, the court should apply the rule that will validate the contract, because "[i]t must be remembered that we are dealing here with a contract, and therefore with obligations, by hypothesis, voluntarily undertaken, and not, as in the case of tort liability or public regulations, obligations imposed simply by virtue of the authority of the State or Federal Government." Kossick v. United Fruit Co., 365 U.S. at 741, 81 S.Ct. at 893, 6 L.Ed.2d at 64. By allowing indemnity provisions to be fully enforceable, the federal maritime law gives parties the contractual freedom to allocate risks between themselves. Had the parties so chosen, they could have reached other terms, or they could have included a choice of law clause stipulating that Louisiana law should govern. While we recognize that one impetus for this legislation was the perceived relative lack of bargaining power on the part of drilling contractors, we also note that other such contractors have included choice of law provisions in their contracts, and some have chosen to apply Louisiana law. See, e.g., Angelina Cas. Co. v. Exxon Corp., 876 F.2d at 42; Stoot v. Fluor Drilling Servs., 851 F.2d at 1517-18. In the absence of such a provision, we must assume that the parties bargained, reached their agreement, and obtained insurance coverage based upon the contractual allocation of risk. If the indemnity obligation increased the risk borne by Two "R" and its insurer, then Two "R" probably received additional consideration as a quid pro quo for bearing this risk. We know for certain that Two "R" received a corresponding indemnity provision relieving it of responsibility for injuries to Mobil employees. It would be inequitable for Mobil to subsidize Two "R"'s added insurance costs and to hold Two "R" harmless for its own negligence in consideration for the agreement to indemnify, only to have this court later invalidate the agreement based upon a novel choice of law theory. See Kossick v. United Fruit Co., 365 U.S. at 741, 81 S.Ct. at 893, 6 L.Ed.2d at 64; see also Fontenot v. Mesa Petroleum Co., 791 F.2d 1207, 1217 (5th Cir.1986) ("[C]ourts should be wary of imposing additional restrictions on the parties' legitimate contractual bargain."). Accordingly, we conclude that the maritime law of indemnity should govern the interpretation of this contract, *256 and the indemnity provisions of the contract are thus valid and enforceable.

Application of Maritime Law
Two "R" argues that even if admiralty law applies and the indemnity provision is valid, the provision does not require indemnity in this case because LeGros was not engaged in work under the contract at the time of the accident. In support of its contentions, Two "R" cites the decision in Lanasse v. Travelers Ins. Co., 450 F.2d 580 (5th Cir.1971), cert. denied, 406 U.S. 921, 92 S.Ct. 1779, 32 L.Ed.2d 120 (1972), which it claims stands for the proposition that a negligent employee of the indemnitee must be engaged in the contract work for indemnity to apply. Mobile, on the other hand, argues that Fontenot v. Mesa Petroleum Co., supra, holds that the applicability of indemnity provisions depends solely upon the location and activity of the injured party. Mobil argues that a proper interpretation of the contractual language leads to the conclusion that the tortfeasor need not be engaged in work under the contract for indemnity to apply.
Neither of these cases, however, create concrete rules of law regarding the applicability of indemnity provisions. Rather, each was decided based upon the language of the contract at issue. In Lanasse, an employee of the indemnitor was injured by the negligence of the indemnitee's employee in operating a crane. The contract, a time charter of a vessel, provided that the indemnitor would hold the indemnitee harmless "against any and all claims for damages, whether to person or property, and howsoever arising in any way directly or indirectly connected with the possession, navigation, management, and operation of the vessel." 450 F.2d at 582 n. 4 (emphasis in original). Since the operation of a crane was not operation of the vessel, the court denied indemnity.
In Fontenot, the plaintiff was injured by the negligence of the indemnitee, a rig owner, in providing an unsafe helicopter landing pad. The contract between the owner and the charterer of the rig provided that the charterer would "protect, defend, indemnify and save [the indemnitee] ... from and against all claims, demands and causes of action of every kind and character, without limit and without regard to the cause or causes thereof or the negligence of any party, arising in connection herewith in favor of [the charterer's] employees, [the charterer's] contractors or their employees... on account of bodily injury, death or damage to property." 791 F.2d at 1213. The plaintiff was an employee of the charterer's subcontractor who was en route to his employment at the time of the accident. Examining the precedents, the Fifth Circuit concluded that because the presence of the employee was attributable to the employment under the contract, the injury occurred "in connection with" the contract. 791 F.2d at 1215.
Thus each case necessarily turns upon the language of the indemnity agreement at issue. Fontenot v. Mesa Petroleum Co., 791 F.2d at 1217; Corbitt v. Diamond M. Drilling Co., 654 F.2d at 333. In this case, the agreement provides in pertinent part that:
[Two "R"] shall defend, protect, indemnify and save [Mobil] ... against any and all claims, demands, causes of action and judgments of every kind and character... in favor of any person on account of personal injuries to or death of any employee... of [Two "R"] ... occurring, growing out of, incident to, or resulting directly or indirectly from the Work, whether such loss ... arises from or is contributed to by the fault or negligence in any form of [Mobil].
This language does not require that the negligence of Mobil's employee that causes the accident bear any connection with the contractual work. Initially, we note that the contract covers Mobil's fault or negligence "in any form." In addition, the agreement requires that the "claim," not the indemnitee's negligence, "result[] directly or indirectly from the Work." The limitation of indemnity to those claims in which Mobil's negligence is related to the work would require us to read the limitation clause as modifying "the fault or negligence in any form of [Mobil]," rather than *257 "claim." While indemnity may only be found where it is clearly intended, see Corbitt v. Diamond M. Drilling Co., 654 F.2d at 333, that rule does not require us to adopt a stilted reading of the contract to avoid finding indemnity. Finally, the contract provides for indemnity for any claims arising from "the Work." This language is broader than that used in Lanasse, supra, which limited indemnity to claims arising from a specific activity, the operation of a vessel. While not identical, this language is more analogous to that used in the time charter in Fontenot, supra.
Because we conclude that the negligence of Mobil need not be related to the contract for indemnity to apply, the dispositive issue here is whether Rodrigue's claim resulted from the work. We conclude that it did. Rodrigue was performing his employment duties, and those duties arose from the contract between Mobil and Two "R". As the court stated in Fontenot v. Mesa Petroleum Co., the Fifth Circuit has "broadly construed language identical or similar to the `arising in connection herewith' language... to unambiguously encompass all activities reasonably incident or anticipated by the principal activity of the contract." 791 F.2d at 1214. The court there ultimately concluded that "where the presence of the injured party is attributable to or might reasonably be anticipated by his employment responsibilities, then his injuries occur `in connection with' those responsibilities." 791 F.2d at 1215. That is the situation here, so we find that the injury of the employee while engaged in contractual work is sufficient to support a conclusion that the claim resulted from that work. Accordingly, the court of appeal was correct in finding that Two "R" is obligated to indemnify and defend Mobil according to the terms of the contract.

Decree
For the reasons stated above, the judgment of the court of appeal is affirmed.
AFFIRMED.
WATSON, J., dissents and assigns reasons.
COLE, J., respectfully dissents.
WATSON, Justice, dissenting.
If applicable, the indemnity agreement should be strictly construed. In my view, it is unreasonable to believe that Two "R" Drilling Company intended to indemnify any negligence of Mobil not arising out of the contract work. Therefore, I respectfully dissent.

ON APPLICATION FOR REHEARING
PER CURIAM.
We granted Two "R"'s application for writs of certiorari in this case to consider whether Louisiana's Oilfield Anti-Indemnity Act, La.R.S. 9:2780, could be applied to maritime contracts of indemnity. In the trial court, two briefs to the court of appeal, and its writ application, briefs and oral arguments to this Court, Two "R" conceded the premise necessary for presentation of this issue: that its contract with Mobil was, in fact, a maritime contract. We affirmed the lower courts and found that the Anti-Indemnity Act was not applicable and that Two "R" thus owed indemnity to Mobil.
In its application for rehearing, however, Two "R" now argues for the first time that its contract was not maritime, and that Louisiana law should thus govern its application. We generally do not grant rehearings to consider issues raised for the first time in the application for rehearing. Rayner v. Rayner, 216 La. 1099, 45 So.2d 637 (1950); State ex rel. Murtagh v. Department of City Civil Serv., 215 La. 1007, 42 So.2d 65 (1949). This rule applies with even more force when the new "issue" was conceded by the party applying for rehearing and served as a basis for our decision in the case. McMurrey v. Gray, 216 La. 904, 45 So.2d 73 (1949). Two "R"'s concession of the maritime nature of the contract is, in this situation, akin to a stipulation: The issue is settled. Accordingly, Two "R"'s application for rehearing is denied.
WATSON and COLE, JJ., vote to grant the application for rehearing.
NOTES
[*] Judge Melvin A. Shortess of the First Circuit Court of Appeal participated in this decision as Associate Justice Pro Tempore.