| iPLOTKIN, Judge,
dissenting:
I respectfully dissent. The majority opinion wrongly relies on Herb’s Welding, Inc. v. Gray, 470 U.S. 414, 105 S.Ct. 1421, 84 *762 L.Ed.2d 406 (1985), for the conclusion that the work-over agreement at issue in this case is subject to the Louisiana Oilfield Anti-Indemnity Act, La.R.S. 9:2780 (“LOAIA”). In that case, the United States Supreme Court confronted an oilfield worker’s claim that he was entitled to benefits under the Longshore and Harbor Workers’ Compensation Act (“LHWCA”), 33 U.S.C. § 901 et seq. Gray, an employee of Herb’s Welding, was working as a welder on a fixed oil drilling platform located within Louisiana territorial waters when he burnt through a gas flow line, causing an explosion. While running from the area, Gray injured his knee. After Herb’s Welding’s LHWCA insurer denied his claim for benefits, Gray filed a complaint with the Department of Labor. The Administrative Law Judge assigned to the matter ruled that Gray was not entitled to LHWCA benefits because he did not satisfy the status prong of the LHWCA.[1]
Gray appealed to the Benefits Review Board, which reversed the ALJ. It concluded that Gray was entitled to LHWCA benefits pursuant to a proviso in the Outer Continental Shelf Lands Act under which LHWCA benefits are made available to oil workers who are injured while working on the Outer Continental Shelf (“OCS”). Although Gray’s injury actually occurred inside Louisiana territorial waters (in other words, he was not injured on the OCS), the Board held that Gray’s “injury nevertheless could be said to have occurred, in the words of the statute, ‘as a result of operations on the outer shelf.” 470 U.S. at 418, 105 S.Ct. at 1424. On appeal, the Fifth Circuit affirmed the Board’s decision.
laBy a 5-4 decision, the Supreme Court reversed the Fifth Circuit, finding that Gray was not entitled to receive LHWCA benefits because he could not satisfy the “status” test. According to the Court, the term “maritime employment” as used in the LHWCA is not intended to provide coverage to “all those who breath salt air.” Id. at 423, 105 S.Ct. at 1427. Rather, the LHWCA, following its 1972 amendments, was intended to provide benefits to those workers injured on navigable waters who are involved in the loading and construction of vessels. As the Court explained it:
While “maritime employment” is not limited to the occupations specifically mentioned in § 2(3), neither can it be read to eliminate any requirement of a connection with the loading or construction of ships. As we have said, the “maritime employment” requirement is “an occupational test that focuses on loading and unloading.” The [1972] Amendments were not meant “to cover employees who are not engaged in loading, unloading, repairing, or building a vessel, just because they are injured in an area adjoining navigable waters used for such activity.”
Id. at 423-24, 105 S.Ct. at 1427 (footnote and citations omitted). Thus, the Court concluded that Gray was not entitled to LHWCA benefits because his occupation, welding, “had nothing to do with the loading or unloading process, nor [was] there any indication that he was even employed in the maintenance of equipment used in such tasks.” Id. at 425, 105 S.Ct. at 1428.
As the foregoing discussion indicates, the issue confronted by the Supreme Court in Herb’s Welding was not, as Aetna now suggests, whether oil and gas exploration constitutes maritime commerce for all purposes. Rather, as I see it, Herb’s Welding address only the more limited question of whether operations coincident with oil and gas exploration constitute “maritime employment” as that term is used in 33 U.S.C. § 902(3). Whatever the answer to that question might be, it has no bearing on the issue we are called on to resolve today.
In point of fact, contrary to the majority’s suggestion, the question posed in this case is similar to that confronted by the first circuit court of appeal in Lewis v. Diamond Servs. Corp., 93-1150 (La.App. 1st Cir. 5/20/94), 637 So.2d 825, writ denied, 94-1638 (La. 10/14/94), 643 So.2d 159. In that case, the *763 court concluded that the provisions of the LOAIA were inconsistent with 33 U.S.C. § 905(c) and that therefore the indemnity provision in question was valid. Id. at 828-29 (citing Alexander v. Chevron USA, Inc., 623 F.Supp. 1462, 1464 n. 4 (W.D.La.1985), affd, 806 F.2d 526 (5th Cir.1986), cert, denied, 483 U.S.Jsl005, 107 S.Ct. 3229, 97 L.Ed.2d 735 (1987); Rigby v. Tenneco Oil Co., 607 F.Supp. 1247, 1249 (E.D.La.1985); Heath v. Stiperior Oil Co., 617 F.Supp. 33, 35-36 (W.D.La.1985)).
The same conclusion is apropos in this case. The work-over agreement entered into by Hercules and Chevron is permissible under 33 U.S.C. § 905(c), which preempts La. R.S. § 9:2780 in cases such as this one that arise under the LHWCA, thereby making the LOAIA inapplicable. Therefore, the indemnity provision is valid and Aetna may not rely on the LOAIA to void its wavier of subrogation in its longshore and harbor worker’s insurance policy. Accordingly, the trial court and the majority err by applying the LOAIA to void Aetna’s wavier of subro-gation. Fontenot’s, and not Aetna’s, motion for summary judgment should be granted.
Any doubt about the propriety of this conclusion is laid to rest by the Louisiana Supreme Court’s decision in Rodrigue v. Le-Gros, 563 So.2d 248 (La.1990). In that case, Mobil Exploration and Producing Southeast (“Mobil”) entered into a contract with Two “R” Drilling Company (“Two ‘R’ ”) by which Two “R” agreed to supply certain equipment and personnel necessary for the drilling of an oil well. The contract in question contained a reciprocal indemnity provision. Plaintiff, Rodrigue, was injured when the vessel he was captaining was struck by a vessel being captained by an employee of Mobil. Ro-drigue brought suit against Mobil and the other captain. Mobil then filed a third-party action against Two “R” seeking to have Two “R” indemnify and hold Mobil harmless. Two “R” counterclaimed seeking to recover the maintenance and cure benefits it had paid to plaintiff.
After both parties filed motions for summary judgment, the trial court dismissed Two “R” ⅛ counterclaim and ruled that Two “R” would be required to defend and indemnify Mobil. Two “R” appealed and the court of appeal affirmed. The Louisiana Supreme Court granted writs and affirmed the lower courts’ decisions. It ruled that because the suit involved a maritime contract, maritime law was applicable.[2] Thus, the court was called on to resolve the question of whether the LOAIA could be applied “in derogation of the substantive maritime law.” Id. at 251.
Lin resolving this inquiry, the court first reviewed one of the underlying policies of maritime law: uniformity. According to the court, a wealth of United States Supreme Court decisions firmly establish the principle that “states may not apply their own substantive law to cases falling within the maritime jurisdiction when the application of such laws would destroy the uniform and consistent nature of the substantive federal maritime law.” Id. at 252. After noting that this principle is constrained by the “maritime but local” exception, see e.g., Western Fuel Co. v. Garcia, 257 U.S. 233, 242, 42 S.Ct. 89, 90, 66 L.Ed. 210, 214 (1921), the court opined that the Supreme Court has failed to delineate a bright line test for ascertaining when application of state law in maritime situations is permissible and when it violates the constitution.
Notwithstanding the lack of a clear test on this issue, the Louisiana Supreme Court opined that under the prevailing choice of law analysis in which states interests are compared to federal maritime interests (i.e., the “reverse-Erie test”), application of the LOAIA is impermissible. The court offered the following explanation for its conclusion, which I find instructive to repeat here:
The federal interest at stake is the uniformity of both the maritime law in gener *764 al and the treatment of indemnity provisions specifically. The modern justification for the federal admiralty jurisdiction is the “important national interest in uniformity of law and remedies for those facing the hazards of waterborne transportation.” This interest in the uniformity of maritime commercial law has been compared with the similar federal interest in uniformity in matters affecting interstate commerce. While the uniformity interest is minimal in many tort cases due to the fortuitous nature of accidental injuries and the strong state interest in providing redress for injuries, this interest is at its zenith when dealing with maritime contracts, which constitute actual commerce. Those who engage in maritime commercial activity expect the application of the uniform federal maritime law; “in the typical case the transaction will be interstate, the interests commercial, and the consequent exclusion of state law clear.”
Comparing Louisiana’s interest in protecting state contractors with the federal maritime interest in uniformity in commercial transactions, we conclude that the maritime rule should prevail here. We reach this conclusion for several reasons. First, unlike the fields of wrongful death or workers’ compensation, the area of indemnity agreements has never been thought to be a special province of the states. Instead, it has generally been governed by common law rules....
* * * * * *
Another consideration favoring application of maritime law to this contract is that the significant events giving rise to |5this litigation were all rooted in maritime commerce. The contract was a maritime contract, and the injuries to the plaintiff in the main demand were the result of a collision between vessels, a classic maritime tort. Since the state of Louisiana cannot legislate to the substance of the main demand, there is little reason to apply its legislation to the substance of a claim ancillary to that main demand. Although the state has an interest in protecting Louisiana contractors, the contractor here has effectively stepped outside Louisiana law and into the domain of maritime commerce, so Louisiana’s interest is not truly hampered by the application of the maritime rule....
Finally, general principles of freedom of contract suggest that the indemnity provision should be upheld. As we have already noted, the federal interest in uniformity is at its greatest in cases dealing with maritime commerce. Furthermore, the Supreme Court has stated that when choosing whether state law or maritime law will apply to a contract, the court should apply the rule that will validate the contract, because “[i]t must be remembered that are dealing here with a contract, and therefore with obligations, by hypothesis, voluntarily undertaken, and not, as in the case of tort liability or public regulations, obligations imposed simply by virtue of the authority of the State or Federal Government.” By allowing indemnity provisions to be fully enforceable, the federal maritime law gives parties the contractual freedom to allocate risks between themselves. Had the parties so chosen, they could have reached other terms, or they could have included a choice of law clause stipulating that Louisiana law should govern. While we l-eeognize that one impetus for this legislation was the perceived relative lack of bargaining power on the part of drilling contractors, we also note that other such contractors have included choice of law provisions in their contracts and some have chosen to apply Louisiana law. In the absence of such a provision, we must assume that the parties bargained, reached their agreement, and obtained insurance coverage based upon the contractual allocation of risk. If the indemnity obligation increased the risk borne by Two “R” and its insurer, then Two “R” probably received additional consideration as a quid pro quo for bearing this risk. We know for certain that Two “R” received a corresponding indemnity provision relieving its of responsibility for injuries to Mobil employees. It would be inequitable for Mobil to subsidize Two “R” ’s added insurance costs and to hold Two “R” harmless for its own negligence in consideration for the agreement to in *765 demnify, only to have this court later invalidate the agreement based upon a novel choice of law theory. Accordingly, we conclude that the maritime law of indemnity should govern the interpretation of this contract, and the indemnity provisions of the contract are thus valid and enforceable.
Id. at 254-56 (emphasis added; citations omitted).
Aetna’s alternative argument is that even if this Court finds that its waiver of subrogation is valid as to Chevron, that wavier does not inure to the benefit of Dantzler. In support of this proposition, Aetna cites Le-Blanc v. Petco, Inc., 647 F.2d 617 (5th Cir. Unit A), cert, denied, 454 U.S. 1085,102 S.Ct. 644, 70 L.Ed.2d 621 (1981), in which the federal Fifth Circuit held that a waiver |6of subrogation extended only to the single party named in the waiver and that it had no effect as to any other parties named as defendants in the tort suit.
I believe that resolution of this argument is premature. As noted in the majority opinion, this case arises on cross-motions for summary judgment. Aetna thus had the burden of proving the absence of disputed issues of material fact concerning the issue of partial waiver. Fontenot bore a similar burden with respect to his motion. Unfortunately, my review of the record shows that neither party discharged its burden. The record as it currently stands contains no evidence as to the contract, if one existed at all, between Hercules and Dantzler. On the one hand, Hercules may have obtained Dant-zler’s services on an emergency basis to assist in the evacuation of Chevron’s platform due to the incoming hurricane. On the other hand, Hercules and Dantzler may have had a long-standing relationship and thus there may well be a contract between the two. Given that this constitutes an unresolved issue of material fact, I believe that entry of summary judgment is inappropriate. I would remand the matter to the trial court for the development of a record sufficient to weigh the merits of Aetna’s claim of partial waiver.
Because I believe that this court should reverse the trial court’s granting of Aetna’s summary judgment, I respectfully dissent.

. In order to receive benefits under the LHWCA, a worker must fulfill both a status test and a situs test. Under the status test, the worker must be engaged in "maritime employment.” 33 U.S.C. § 902(3). Under the situs test, the worker must suffer injury "upon the navigable waters of the United States.” 33 U.S.C. § 903(a).

. Although this point was conceded by the parties, the court noted that under established jurisprudence of the United States Fifth Circuit Court of Appeals, "a contract for oil and gas drilling aboard a vessel on navigable waters is a maritime contract." Id. at 251 (citing Theriot v. Bay Drilling Corp., 783 F.2d 527 (5th Cir.1986); Cor-bitt v. Diamond M. Drilling Co., 654 F.2d 329 (5th Cir. 1981); Transcontinental Gas Pipe Line Corp. v. Mobile Drilling Barge Mr. Charlie, 424 F.2d 684 (5th Cir. 1970)).