# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 9, 2009

Charles R. Fulbruge III
Clerk

No. 08-60898

GREAT LAKES REINSURANCE (UK) PLC

Plaintiff-Appellant

v.

DURHAM AUCTIONS INC.

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Mississippi

Before KING, GARWOOD and DAVIS, Circuit Judges.

GARWOOD, Circuit Judge.

This case is before us on a certified question under 28 U.S.C. § 1292(b). An administration panel of this court previously granted the motion of the parties for leave to appeal under FED. R. APP. P. 5. The appeal presents choice of law questions respecting a marine insurance policy.

Plaintiff-appellant, Great Lakes Reinsurance (UK) PLC ("Great Lakes"), a United Kingdom non-admitted surplus lines insurer, brought this action in the district court below against defendant-appellee, Durham Auctions, Inc. ("Durham"), a Mississippi Corporation with its principal place of business in Mississippi, to declare void a policy of marine insurance Great Lakes had issued

to Durham.  The policy covered the vessel "Time Out," a 48 foot, diesel powered, model 1979, "Pacemaker" motor yacht, owned by Durham.

Jurisdiction was founded on 28 U.S.C. § 1333(1), admiralty or maritime jurisdiction.  The policy covered the period November 8, 2004, to November 8, 2005, and provided principally hull and protection and indemnity coverage in respect to the vessel (only the hull coverage is involved here).  Durham counterclaimed for recovery under the policy for loss of the vessel when it sank in September 2005 while moored in Cedar Lake, Mississippi.  The vessel was normally berthed at Biloxi, Mississippi, and was used by the owners of Durham, and their family and friends, for sports fishing and general pleasure use in the Gulf Coast area.  The policy quotation provides, in part, "Warranted Private and Pleasure use only.  Navigating Inland & Gulf Coast USA and Gulf of Mexico not exceeding 100 miles offshore."

Durham had initially acquired the vessel in November 2002 in Florida, and promptly moved it across the Gulf, under its own power, to Mississippi, where it was berthed thereafter.  The vessel was apparently insured by another insurer from November 2002 to November 2004.

To acquire the Great Lakes policy, Durham went through its Mississippi agent, which in turn retained a Florida broker which in turn retained a United Kingdom broker, to whom Great Lakes issued the policy and who then delivered the policy to the Mississippi agent, who delivered it to Durham.[1]  The policy expressly provides that the insured may serve process on the insurer by serving specified attorneys at their stated New York City addresses and that in any such

---

[1] The policy stated: "It is hereby agreed that your brokers or any substituted brokers (whether surplus line approved or otherwise), shall be deemed to be exclusively the agents of you and not of us in any and all matters relating to, connected with or affecting this insurance."

suit on the policy "the Underwriters will abide the final decision of the Court or any Appellate court in the event of an appeal."[2]

Great Lakes moved for summary judgment asserting that the policy was voided at its inception by material misrepresentations by Durham in the insurance application, which the policy incorporates, including misrepresentations and failures to disclose concerning the purchase price paid by Durham for the vessel, its loss history and status of repairs,[3] and breaches of express policy warranties concerning the condition of the vessel and related matters.[4]

---

[2] The policy states:

"(a)     It is further agreed that the Assured may serve process upon any senior partner in the firm of:

> Goldman & Hellman
> 730 Fifth Avenue, 9th Floor
> New York
> NY 10019

and that in any suit instituted against any one of them upon this contract the Underwriters will abide by the final decision of the Court or any Appellate Court in the event of an appeal.

(b)     The above named are authorised and directed to accept service of process on behalf of Underwriters in any such suit and/or upon request of the Assured to give written undertaking to the Assured that they will enter a general appearance upon the Underwriters behalf in the event such a suit shall be instituted."

[3] The policy provides that it "is null and void in the event of non-disclosure or misrepresentation of a fact or circumstance material to our acceptance or continuation of this insurance.  No action or inaction by us shall be deemed a waiver of this provision."  It further states that "[t]his insuring agreement incorporates in full your application for insurance . . . ."

[4] Other policy provisions include the following: "This insuring agreement does not cover any loss or damage caused by your failure to exercise due diligence properly to manage the scheduled vessel or maintain it in a seaworthy condition" and that:

"Unless we agree in writing to the contrary, if we request a survey of the

Particularly relevant to this appeal is the policy's "CHOICE OF LAW" provision, reading as follows:

"It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the state of New York."

In its motion for summary judgment, Great Lakes relied on this clause and on the maritime law doctrine of *uberrimae fidei*.[5]  Great Lakes recognized,

---

scheduled vessel then such survey must be received by us within 30 days of the effective date of this agreement.  If the survey makes any recommendations with respect to the scheduled vessel, then it is an express warranty of this agreement that all such recommendations are completed prior to any loss giving rise to any claim hereunder, by skilled workmen using fit and proper materials and that either,
(1) The surveyor who carried out the survey certifies in writing that all recommendations have been completed to his (the surveyors) satisfaction prior to any loss and/or claim
Or,
(2) The workmen/repair yard that carried out the said work and/or recommendations certifies in writing that all recommendations have been completed prior to any loss and/or claim.  Failure to comply with this warranty will void this agreement from inception."

[5] 2 SCHOENBAUM, ADMIRALTY AND MARITIME LAW (4th Ed., 2004) generally describes this doctrine as follows:

"Marine insurance is a contract "*uberrimae fidei*", requiring the utmost good faith by both parties to the contract.  Often the insurer lacks the practicable means to verify the accuracy or sufficiency of facts provided by the insured for purposes of establishing the contractual terms.  Consequently, the doctrine *uberrimae fidei* imposes the highest degree of good faith.  The assured is bound, although no inquiry be made, to disclose every fact within his knowledge that is material to the risk.

Failure by the assured to disclose all available information will allow the insurer to avoid the policy.  In marine insurance, contrary to the general rule applicable to other kinds of insurance, any misrepresentation or omission to communicate a material fact will vitiate the policy whether such omission is intentional or results from mistake, accident, forgetfulness, or inadvertence.  Moreover, this representation and disclosure requirement in marine insurance utilizes a broad definition of materiality in defining which facts necessitate

4

however, that in *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 75 S.Ct. 268 (1955), the Court held that, because there was no "judicially established federal admiralty rule governing" the warranties at issue in the insurance policy covering the fire damaged vessel in that case, *id.* at 370, the federal courts should not "attempt to fashion an admiralty rule governing [those] policy provisions." *Id.* at 373-74. The case was accordingly remanded "for a trial under appropriate state law." *Id.* at 374. And, Great Lakes further recognized that in *Albany Ins. Co. v. Kieu*, 927 F.2d 882 (5th Cir. 1991), this court held "albeit with some hesitation, that the *uberrimae fidei* doctrine is not 'entrenched federal precedent'" so that, under the Supreme Court's *Wilburn Boat* opinion, state law, rather than federal *uberrimae fidei,* applied. *Kieu* at 889.[6] Accordingly, *Great Lakes* took the position that even if the first clause of the policy's above "CHOICE OF LAW" provision, concerning "well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice" did not apply, nevertheless the second clause thereof, calling for application of "the substantive laws of the state of New York" *would* apply, and further, that "New York law echoes the doctrine of *uberrimae fidei* as described."

The district court denied Great Lakes' motion for summary judgment. It ruled that Mississippi law, not *uberrimae fidei* nor New York law, applied. As to New York law, the court observed that "the parties have not made it sufficiently

---

disclosure. A fact is material if, to a prudent insurer, its existence would affect decisions on the risk assumed. The policy may be in a proper form, yet a showing of lack of the utmost good faith as required under the doctrine of *uberrimae fidei* will void the contract *ab initio* or even after the risk has attached."

*Id.* at 297-300 (footnotes omitted).

[6] We went on to say in *Kieu*: "This Court does not hold that federal maritime law no longer embraces the *uberrimae fidei* doctrine . . . Neither does this Court hold that state insurance law always will supercede the *uberrimae fidei* doctrine." *Id.* at 890.

clear that New York has any substantial relationship to the parties or the transaction, or that there is any other reasonable basis for this choice of law." The court went on to hold that there were genuine issues of material fact as to whether certain misrepresentations by Durham (including representing the purchase price of the vessel as $150,000 when it was actually $100,000) were material and that Durham's failure to disclose certain matters was not grounds for policy cancellation because under Mississippi law there was no such duty as to matters not specifically inquired about although recognizing that the duty to disclose was not so limited under *uberrimae fidei*.[7]

Thereafter, Great Lakes filed a Motion in Limine to declare choice of law, requesting that the court rule that, pursuant to the policy's choice of law provision the applicable law was that of New York, or, alternatively, that *Kieu* was wrongly decided and that *uberrimae fidei* was firmly entrenched federal precedent and should be applied either as such or under the choice of law provision. In support of this motion, Great Lakes submitted an affidavit reflecting that: Great Lakes, a United Kingdom business entity with its principal place of business in the United Kingdom, maintained its agent for service of process in New York; that New York was the first state in which Great Lakes was approved as a surplus lines carrier; that Great Lakes maintains its United States Trust Fund account in New York; and that "Great Lakes' most substantial relationship in the United States is with the state of New York." The district court denied this motion, and subsequent motion for reconsideration, essentially ruling that it had already determined the issue on its denial of Great Lakes' motion for summary judgment and the evidence and

---

[7] The district court had previously correctly denied Durham's motions to dismiss based in part on Durham's erroneous theory that since state law applied under *Wilburn Boat* that there was no admiralty jurisdiction under 28 U.S.C. § 1333(1). *See Wilburn Boat*, 75 S.Ct. at 370 ("Since the insurance policy here sued on is a maritime contract the Admiralty Clause of the Constitution brings it within federal jurisdiction.").

arguments thereafter submitted by Great Lakes were too late. We note, however, that there was no *grant* of summary judgment, partial or otherwise, as to whether *uberrimae fidei* or New York or Mississippi law applied, nor had there been any pretrial conference or any pretrial order under Rule 16, FED. R. CIV. P., relating thereto, and hence the choice of law issue remained open for trial on the merits.

Subsequently, and prior to any pretrial order under Rule 16, Great Lakes and Durham filed with the district court their joint motion for certification of an interlocutory appeal under section 1292(b). They advised the district court that they had reached a bracketed settlement agreement contingent only upon the resolution on appeal of the choice of law issue, and requested the court to certify under section 1292(b) its rulings on Great Lakes' motion for summary judgment, its motion in limine to declare choice of law and its motion for reconsideration insofar as they addressed that issue. The district court granted the motion, stating in its order that,

> "According to the Joint Motion, the parties have reached a bracketed settlement agreement contingent only upon the outcome of the choice of law issue on appeal. . . . [t]he sole remaining issue to be determined is the applicable law.
>
> . . .
>
> This Court's earlier opinions addressed several issues relevant to the choice of law question. The parties' settlement agreement is contingent only upon the outcome of the choice of law issue on appeal; specifically whether Mississippi law, New York law or the General Maritime Law doctrine of *Uberrimae Fidei*, governs the parties' rights under a contract of marine insurance. The parties have agreed to submit the choice of law issue based upon the current record, having stipulated that the record of the District Court is complete as to all factual contentions relevant to this determination, and have further agreed not to ask the Court of

Appeals to remand the case for further proceedings at the trial court level.[8]

At oral argument the parties confirmed that pursuant to their bracketed settlement agreement, their motion and the district court's order, the only issue to be resolved is whether, on the basis of the current record, the applicable substantive law is, on the one hand, Mississippi law, in which event Durham will receive from Great Lakes a specified settlement amount, or, on the other hand, is either the General Maritime law doctrine of *Uberrimae Fidei* or New York law, in which event Durham will receive from Great Lakes, a different (lesser) specified settlement amount.[9] The parties have made it clear that we are called upon only to determine whether either *Uberrimae Fidei or* New York law, not *which one*, is applicable rather than Mississippi law.

## DISCUSSION

Great Lakes contends that we should invoke the first clause of the policy's choice of law provision, calling for application of "well established, entrenched principles" of federal admiralty law, and thus should apply *uberrimae fidei* because it is such a principle. Recognizing that this is contrary to our decision in *Kieu*, Great Lakes contends that we should overrule *Kieu* because it was wrongly decided and stands alone among the circuits which have considered that

---

[8] The district court's order further provides that the orders certified "involve controlling questions of law as to which there is substantial ground for difference of opinion and that an immediate appeal from these rulings will materially advance the ultimate termination of the litigation."

[9] The agreement of the parties provides that "after completing their rights on appeal, the parties will return to the trial court only for the purpose of entering a final order of dismissal."

issue.[10] However, it is settled that one panel of this court may not overrule another.

We turn, thus, to Great Lakes' alternative contention, namely that, under the final clause of the policy's "Choice of Law" provision, New York law applied.

We agree with this contention. Assuming that the first provision of the policy's choice of law clause does not apply because, under *Kieu*, *uberrimae fidei* is not considered a well established maritime law principle, then the second provision of the policy's choice of law clause applies and properly calls for the application of new York law. *Kieu* is not to the contrary. As *Kieu* states, "the court in maritime cases *must* apply general federal maritime choice of law rules." *Id*. at 890 (emphasis added; citing *Gonzalez v. Naviera Neptuno A.A.*, 832 F.2d 876, 880 n.3 (5th Cir. 1987), where we said "[a]lthough a federal court customarily applies the forum's choice of law analysis, sitting in admiralty, we apply admiralty choice of law."). *Kieu* went on to apply the "most significant relationship approach" applying the factors set out in Restatement (Second) of Conflict of Laws § 188. *Kieu*, however, did *not* involve a choice of law clause in the maritime insurance policy at issue there. We also note that section 188(2) of the Restatement, listing the relevant factors to be considered, commences by stating "[i]n the absence of an effective choice of law by the parties (see § 187)." Generally speaking, under section 187(1) the law of the jurisdiction chosen by

---

[10] *See, e.g.*, *AGF Marine Aviation Transport v. Cassin*, 544 F.3d 255, 263 (3d Cir. 2008) ("The Fifth Circuit is the only circuit to disavow the doctrine of *uberrimae fidei* as not 'entrenched federal precedent'"); *Certain Underwriters At Lloyd's v. Inlet Fisheries*, 518 F.3d 645, 653 (9th Cir. 2008) ("Not surprisingly, no other circuit has followed *Anh Thi Kieu* . . . .). *See also, e.g.*, the following stating that *uberrimae fidei* is entrenched maritime law: *HIH Marine Services Inc. v. Fraser*, 211 F.3d 1359, 1362 (11th Cir. 2000); *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 13 (2d Cir. 1986); SCHOENBAUM, note 5 supra, and at 297 n.1 ("The duty of good faith is well established as the federal maritime law rule in marine insurance. . . . In summary, the principle of good faith is alive and well despite the Fifth Circuit's decision in *Anh Thi Kieu*"); G. Gilmore & C. Black, *Law of Admiralty* 62 (2nd Ed. 1975) ("The marine insurance contract is *uberrimae fidei*. . .").

the parties will be applied to the issue in question if the parties could have resolved the issue by an explicit provision in their agreement directed to that issue. Even if that is *not* the case, the law of the chosen jurisdiction will still apply unless *either* of conditions (a) and (b) following is met, *viz* (a) the chosen state has no substantial relationship to the parties or the transaction, *and* "there is no other reasonable basis for the parties' choice," or (b) the application of the chosen state's law "would be contrary to a fundamental policy of a state" whose law would be the applicable law determined under the section 188 analysis in the absence of an effective choice of law by the parties.[11]

Under federal maritime choice of law rules, contractual choice of law provisions are generally recognized as valid and enforceable. Thus, SCHOENBAUM states: "A choice of law provision in a marine insurance contract

---

[11] Section 187 states:

"**§ 187.** Law of the State Chosen by the Parties

(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

(3) In the absence of a contrary indication of intention, the reference is to the local law of the state of the chosen law."

will be upheld in the absence of evidence that its enforcement would be unreasonable or unjust." *Id*. at 276. *See also id*. at 283 (same). The *identical* choice of law provision as that involved in this case was likewise before the Third Circuit in *AGF Marine Aviation & Transport v. Cassin*, 544 F.3d 255, 262 (3d Cir. 2008). The court specifically invoked this provision in holding that New York law applied to the issue of whether a loss payee could recover independently of the insured, there being no well established admiralty principle governing that particular issue. *Id*. at 265 & n.9. Other courts are in accord. Thus, in *Chan v. Society Expeditions, Inc.*, 123 F.3d 1287 (9th Cir. 1997), the Ninth Circuit stated:

> "In the absence of a contractual choice-of-law clause, federal courts sitting in admiralty apply federal maritime choice-of-law principles derived from the Supreme Court's decision in *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), and its progeny. *See Sundance Cruises Corp. v. The American Bureau of Shipping*, 7 F.3d 1077, 1081 (2d Cir. 1993); *see also* SCHOENBAUM § 6-13, at 280-82. But where the parties specify in their contractual agreement which law will apply, admiralty courts will generally give effect to that choice. *See Milanovich v. Costa Crociere, S.p.A.*, 954 F.2d 763, 767 (D.C. Cir. 1992). The D.C. Circuit has held,

> > [C]ourts should honor a contractual choice-of-law provision in a passenger ticket unless the party challenging the enforcement of the provision can establish that enforcement would be unreasonable and unjust, the clause was invalid for such reasons as fraud or overreaching, or enforcement would contravene a strong public policy of the forum in which suit is brought.

> *Id*. at 768 (internal quotations omitted)."[12]

---

[12] The *Chan* court went on to hold that even though, in the absence of a choice of law clause in the maritime contract involved, another jurisdiction's law would have been applicable, the choice of law provision in the contract nevertheless controlled. *Id*. at 1296-97.

This court has likewise recognized and enforced maritime contract choice of law provisions. In *Stoot v. Fluor Drilling Services, Inc.*, 851 F.2d 1514 (5th Cir. 1988), we considered a suit based on an indemnity clause contained in a contract by which D&D Catering, a Louisiana corporation, the designated indemnitor, agreed to provide catering services to Fluor Drilling on diverse offshore drilling rigs. We held that the district court correctly determined that the contract was a maritime one and that the indemnity provisions were generally governed by maritime law, under which they were valid. However, we held that the district court erred by not applying the Louisiana Oilfield Anti-Indemnity Statute, which voids such indemnity provisions, *because* the contract stated that Louisiana law governed, *viz*:

> "In the absence of a choice of law clause, the construction of indemnity provisions in a contract involving maritime obligations is governed by maritime law. . . . However, under admiralty law, where the parties have included a choice of law clause, that state's law will govern unless the state has no substantial relationship to the parties or the transaction or the state's law conflicts with the fundamental purposes of maritime law. *Hale v. Co-Mar Offshore Corp.*, 588 F. Supp. 1212, 1215 (W.D. La. 1984)." *Id.* at 1517.[13]

---

[13] The cited passage in *Hale v. Co-Mar Offshore Corp.*, reads as follows (*id.*, 588 F. Supp. at 1215):

"Under admiralty law, the law of the state chosen by the parties to govern their contractual rights and duties will be applied unless either (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of the jurisdiction which would provide the rule of decision for the particular issue involved in the absence of an effective contrary choice of law by the parties.[4]

> 4. *See Restatement (Second) of Conflict of Laws* § 187(2) (1971); *cf. The Bremen v. Zapata Offshore Co.*, 407 U.S. 1, 10, 15, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972) (a choice of forum clause is valid unless it is either unreasonable or contrary to a strong public policy of the forum in which suit is brought)."

In *Hale*, Noble Drilling, an Oklahoma corporation, contracted with Anadarko Production to

We hold that Durham has not carried its burden of showing that application of New York law, as provided in the policy, would be unreasonable or unjust. There is no showing that the fact that Great Lakes, a United Kingdom entity whose most substantial relationship in the United States is with New York, where it maintains its agent for service of process (as also reflected in the policy) and its United States Trust Fund account, does not constitute a reasonable basis for the choice of New York law to govern its marine insurance policy providing hull coverage to an ocean going vessel expected to travel up to 100 miles offshore along the United States Gulf Coast and the Gulf of Mexico. Nor is there any showing that New York law conflicts with any fundamental purpose of maritime law. While New York insurance law apparently does apply *uberrimae fidei*, and, under *Kieu*, that doctrine is not "entrenched federal precedent," nevertheless *Kieu* expressly does *not* hold that that federal maritime law no longer embraces the *uberrimae fidei* doctrine. *Id*. at 890. To hold that New York law, because it applies *uberrimae fidei*, conflicts with any fundamental purpose of maritime law, would be to unduly extend *Kieu* and to run counter to the great weight of authority which has embraced that doctrine in maritime insurance cases. See note 10 *supra*. And, as applied to hull insurance on a vessel sailing the high seas, such a holding would also seem to be in considerable tension, if not fundamentally inconsistent, with the rationale of *Kossick v. United States*, 81 S.Ct. 886 (1961).

---

conduct drilling operations on a fixed platform on the Outer Continental Shelf off the coast of Texas. The contract provided that Anadarko indemnify Noble for claims against Noble by employees of Anadarko or its subcontractors, without regard to Noble's negligence. The contract stated that the parties' rights would be determined according to Oklahoma law. The court held that the underlying claim in question arose from a separable maritime obligation under the drilling contract and that under maritime law the Oklahoma choice of law provision was valid and enforceable. As to claims that the Texas Anti-Indemnity statute would arguably apply, the court noted that "the critical inquiry focuses not upon Texas law and policy, but upon maritime law and policy." *Id*. at 1214.

13

Durham argues that application of new York law would be contrary to fundamental policy of Mississippi. Assuming, arguendo, that this would be determinative, it has not been shown. Durham cites nothing to support that view except section 83-5-7, Mississippi Code of 1972.[14] That statute, however, does not expressly speak to any relevant substantive rule concerning insurance policies or choice of law. The only case cited by either party concerning the statute is *Hartford Accident & Indemnity Co. v. Delta & Pine Lane Co.*, 54 S.Ct. 634 (1934), cited by *Great Lakes*. There the United States Supreme Court reversed the Mississippi Supreme Court's decision, 150 So. 205 (Miss. 1933), holding, apparently in partial reliance on section 83-5-7, that, in a Mississippi suit on a fidelity bond for a Mississippi corporation's loss in Mississippi, Mississippi law applied to invalidate the time to sue restrictions stated in the bond, not withstanding that the bond was issued and delivered in Tennessee where the restrictions were valid. The United States Supreme Court held this application of Mississippi law violated the due process rights of the bonding company. What apparently drove the result in the Mississippi Supreme Court was the Mississippi statute (section 2294, Code of 1930) providing that contractual stipulations purporting to change the limitations periods prescribed by the Mississippi Code were void. *Id.*, 84 S.Ct. at 635. There is no Mississippi statute which speaks to anything in this case analogously to the role of section 2294 in the *Hartford* case. To the extent that section 83-5-7 impliedly addresses Mississippi conflict of law rules, it is not controlling because in this marine

---

[14] **§ 83-5-7. Situs of contract.**

It shall be unlawful for any company to make any contract of insurance upon or concerning any property or interest or lives in this state, or with any resident thereof, or for any person as insurance agent or insurance broker to make, negotiate, solicit, or in any manner aid in the transaction of such insurance unless and except as authorized under the provisions of this chapter. All contracts of insurance on property, lives, or interests in this state shall be deemed to be made therein."

insurance case it is *maritime*, not state, conflict of law rules that govern.[15] We also note that Durham has not demonstrated that any relevant principle of New York law would produce as to any particular issue in this case a result which the parties could not have validly resolved (under Mississippi or general maritime law) by an explicit provision in the policy directed to that issue. For example, Durham has not shown that the policy could not have validly expressly provided that the obligation to disclose extended to known facts material to the risk whether or not specifically inquired about by the insurer.

## CONCLUSION

In conclusion, our answer to the certified question is that either the general maritime law doctrine of *uberrimae fidei* or New York law, rather than Mississippi law, governs the parties' rights under the instant marine insurance policy.[16]

QUESTION ANSWERED, CAUSE REMANDED

---

[15] Moreover, and in any event, we observe the Mississippi Supreme Court has clearly indicated the propriety of applying the choice of law provision stated in an insurance policy. *See Zurich American Ins. Co. v. Goodwin*, 920 So. 2d 427, 435 n.7 (Miss. 2006) (en banc) (in a prior Mississippi Supreme Court decision "Illinois law applied not because that was where the contract [insurance policy] was issued but because the parties included a choice of law provision in their contract making such an analysis unnecessary").

[16] The cause is remanded to the district court for purpose of entry of judgment of dismissal on motion of the parties pursuant to their agreement (see note 9, *supra*).