FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2017 MAR 13 AM 9: 11



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

WORKHOUSE MEDIA, INC., a
Washington Corporation,

              Respondent,

      v.

FERNANDO VENTRESCA, AKA
FERNANDO VENTURA, a single person;
GREG SHERRELL, a single person,

              Appellants.

No. 75373-8-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: March 13, 2017

APPELWICK, J. — Workhouse was granted summary judgment on its claims for commissions pursuant to a contract. Ventresca and Sherrell argue that the superior court lost its subject matter jurisdiction to rule on this contract case when they asserted a defense under California law. They argue that the contract's choice of Washington law is void because Workhouse, a Washington corporation, worked as a talent agent in California without the proper license. And, they argue the contract is void under California law. We affirm.

## FACTS

Fernando Ventresca and Greg Sherrell (collectively "the Hosts") host a morning radio show in San Francisco, California. They reside in California. Paul

B. Anderson Media Inc., now known as Workhouse Media Inc., was incorporated and headquartered in Washington. Paul Anderson, a Washington resident, is the President of Workhouse. Neither Anderson nor Workhouse is a licensed talent agent in California.

In May 2009, the Hosts entered into their own individual contracts with Workhouse. They signed the agency contracts in California. The terms were identical. The agency contracts stated that the agency services would include "employment searches, career strategy, and negotiating Artist's employment and/or separation agreements." The contracts stated that Workhouse was to receive eight percent commission from any new deals that it negotiated for the Hosts. They also contained a choice of law provision selecting Washington law to govern the contracts, and selected King County, Washington, as the venue for any suit under the contracts.

Pursuant to the agency contracts, Workhouse negotiated a three year contract with CBS Radio KMVQ-FM Inc. Their work on that contract began in November 2011. That contract provided CBS the right to match any offer made to the Hosts for a period extending six months after its expiration. The Hosts paid Workhouse the commissions due on the compensation for service they performed under the terms of that CBS Radio contract.

Workhouse remained the agent for the Hosts. In the third year of the CBS Radio contract, in July 2014, Workhouse began negotiating a new radio contract for the Hosts. Shortly thereafter, on July 22, 2014, CBS sent the Hosts and

2

Workhouse a notice of intent to renew the Hosts' radio contract. However, the Hosts preferred to enter into a new radio contract with a different company, iHeart Media + Entertainment Inc., doing business as iHeart Radio. Workhouse negotiated with iHeart as requested. iHeart was told that CBS had a right to match provision. iHeart sent Workhouse proposed contracts for review by the Hosts on November 14, 2014. The iHeart offer gave the Hosts an average annual salary of over $500,000 plus bonuses, and would have been a substantial raise over the Hosts' previous three year contract.

Pursuant to the Hosts' contractual duty, Workhouse informed CBS of iHeart's offer on November 19, 2014. On December 3, 2014, CBS elected to exercise its right to match, and the Hosts signed new contracts with CBS that matched the terms of iHeart's offers. Shortly thereafter, the Hosts notified Workhouse that they were terminating their agency contract with Workhouse. The Hosts have not paid the eight percent commission owed to Workhouse based on the new the CBS contract.

On August 26, 2015, Workhouse filed suit in King County Superior Court against Sherrell and Ventresca for breach of contract. The Hosts filed counterclaims against Workhouse for negligence, negligent misrepresentation, and unjust enrichment. On January 12, 2016, the trial court dismissed the counterclaims, and the hosts have elected not to address the dismissal of the

3

counterclaims on appeal. The Hosts appeal summary judgment in favor of Workhouse.[1]

## DISCUSSION

### I. Jurisdiction

The Hosts first argue that the superior court did not have subject matter jurisdiction. Whether a court has subject matter jurisdiction is a question of law reviewed de novo. ZDI Gaming, Inc. v. Wash. State Gambling Comm'n, 173 Wn.2d 608, 624, 268 P.3d 929 (2012).

The Hosts raised a defense under California's Talent Agencies Act[2] (TAA). California law grants the California Labor Commissioner exclusive jurisdiction over the TAA. See Styne v. Stevens, 26 Cal. 4th 42, 54, 26 P.3d 343 (2001) ("When the Talent Agencies Act is invoked in the course of a contract dispute, the Commissioner has exclusive jurisdiction to determine his jurisdiction over the matter."). The TAA gives the Labor Commissioner exclusive original jurisdiction "[e]ven when the Talent Agencies Act is only being raised as a defense to an action for commissions." Garcia v. Bonilla, No. TAC 4-02, at 8 (Cal. Office of

---

[1] The Hosts' notice of appeal included an appeal of the trial court's April 25, 2016, order granting plaintiff's motion for attorney's fees and costs. But, in their brief, they do not assign error to or make arguments regarding the trial court's award of attorney fees. We therefore do not address these issues. See Emmerson v. Weilep, 126 Wn. App. 930, 939-40, 110 P.3d 214 (2005) (" 'It is well settled that a party's failure to assign error to or provide argument and citation to authority in support of an assignment of error, as required under RAP 10.3, precludes appellate consideration of an alleged error.' "(quoting Escude ex rel. Escude v. King County Pub. Hosp. Dist. No. 2, 117 Wn. App. 183, 190 n.4, 69 P.2d 895 (2003))).

[2] Cal. Labor Code § 1700-1700.47.

Labor Comm'r Jan. 22, 2003), https://www.dir.ca.gov/dlse/TAC/2002-04%20Edgar%20Francisco%20Jimenez%20Garcia%20v%20Piedad%20Bonilla%20dba%20Pinata%20Prod%20&%20Mgmt.pdf [https://perma.cc/92GM-82RK]. The Hosts argue that the King County Superior Court lost its subject matter jurisdiction because the Hosts raised this defense.[3]

Washington superior courts have broad original subject matter jurisdiction under the Washington Constitution article IV, section 6. In re the Marriage of McDermott, 175 Wn. App. 467, 481, 307 P.3d 717 (2013). This includes original jurisdiction over contract claims. Outsource Servs. Mgmt., LLC v. Nooksack Bus. Corp., 181 Wn.2d 272, 276, 333 P.3d 380 (2014).

The Hosts note that the Washington legislature has granted certain administrative agencies exclusive original subject matter jurisdiction over some specific claims. Therefore, they argue, it is acceptable to legislatively divest superior courts of original jurisdiction. But, the legislature may only divest superior courts of their residual, i.e., nonenumerated, jurisdiction:

> Article IV, section 6 also grants the superior courts residual jurisdiction over nonenumerated cases and proceedings, providing that superior courts "shall also have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court . . . . " (Emphasis added.) It is with respect to cases and proceedings that fall within

___

[3] Workhouse responds by arguing that the Hosts consented to jurisdiction by filing counterclaims and proceeding with this litigation. But, "litigants may not waive subject matter jurisdiction." Skagit Surveyors and Eng'rs, LLC v. Friends of Skagit County, 135 Wn.2d 542, 556, 958 P.2d 962 (1998) (emphasis omitted). Subject matter jurisdiction may be challenged "at any point in a proceeding, even on appeal." In re Marriage of McDermott, 175 Wn. App. 467, 479, 307 P.3d 717 (2013).

the residual jurisdiction of the superior courts that the legislature can vest exclusive jurisdiction in an alternative forum.

State v. Posey, 174 Wn.2d 131, 136, 272 P.3d 840 (2012) (alteration in original). The Hosts are correct that the legislature has the power to grant agencies original subject matter jurisdiction over specific types of claims. See id. However, in areas where the constitution specifically grants jurisdiction to the superior courts the legislature cannot restrict the jurisdiction of the superior courts. Id. at 135.

Workhouse brought a Washington breach of contract claim for greater than $3000, which is within the scope of superior courts' enumerated jurisdiction. See WASH. CONST. art. IV, § 6 (enumerating specific types of claims over which superior courts have original jurisdiction, including "cases in which the demand or the value of the property in controversy amounts to three thousand dollars."). The superior court therefore had subject matter jurisdiction over this case. Here, if California law applied, a California statute granted an agency original jurisdiction over the claim, and exhaustion of remedies was required, the court may have lacked statutory authority to resolve the case on the merits. But, this would not deprive the court of subject matter jurisdiction.

II. Choice of Law

The Hosts next argue that the trial court erred by granting summary judgment on the grounds that the Washington choice of law provision is enforceable. Appellate courts review summary judgment orders de novo. Owen v. Burlington N. & Santa Fe R.R., 153 Wn.2d 780, 787, 108 P.3d 1220 (2005).

All facts and reasonable inferences must be considered in the light most favorable to the nonmoving party. Clark v. Baines, 150 Wn.2d 905, 910-11, 84 P.3d 245 (2004). Summary judgment is warranted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Van Noy v. State Farm Mut. Auto Ins. Co., 142 Wn.2d 784, 790, 16 P.3d 574 (2001).

The parties' contract states simply that Washington law governs and the venue shall be in King County. The Hosts argue that the choice of law provision should be declared void. Their argument is not based on a defense to the formation of contract as to that term, such as duress. It is simply that, based on the manner in which the contract was performed, California law should be applied. Anderson is not a licensed talent agent in California. But, he negotiated the contract for the Hosts' California radio show. And, under California law, "any contract of an unlicensed person for talent agency services is illegal and void ab initio." Styne, 26 Cal. 4th at 46.

This issue turns on whether the Washington choice of law provision in the contracts is valid.[4] We review choice of law issues de novo. Erwin v. Cotter

---

[4] Procedurally, this is not a typical choice of law dispute. The posture of this case is virtually identical to the posture of Erwin:

> This case does not present a classic conflict of laws problem in which the forum state undertakes a conflict of laws analysis to determine whether the contractually chosen law or forum law will govern. Here, although the parties chose Washington law and the forum is Washington, Cotter argues that the law of California—neither the parties' chosen law nor the law of the forum—should apply.

Health Centers, 161 Wn.2d 676, 691, 167 P.3d 1112 (2007). Washington follows the most significant relationship test of the Restatement (Second) of Conflict of Laws § 187 (Am. Law Inst. 1971) when resolving a conflict of laws issue in which the parties have made an express contractual choice of law. Erwin, 161 Wn.2d at 693-94.

Washington courts generally enforce choice of law provisions subject to certain exceptions.[5] McKee v. AT & T Corp., 164 Wn.2d 372, 384, 191 P.3d 845 (2008). Section 187(2) is one of those exceptions. SeeErwin, 161 Wn.2d at 695-96. It provides that:

> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
> > (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

---

> Nor does either party argue that the contractual choice of law is a product of the parties' unequal bargaining power or some other unconscionable condition.

Erwin v. Cotter Health Centers, 161 Wn.2d 676, 691, 167 P.3d 1112 (2007). The same is true here. The Hosts ask this court to apply neither the parties' chosen law nor law of the forum. And, they do not contend that the choice of law provision was the result of unequal bargaining power.

Nevertheless, the Erwin court also proceeded to analyze Washington and California law under Washington's choice of law principles. 161 Wn.2d at 691-92. We do the same here.

[5] Before engaging in a conflict of laws analysis, a court must first determine whether an actual conflict of law exists. Erwin, 161 Wn.2d at 692. An actual conflict exists if the result for a particular issue is different under the law of the two states. Id. Neither party argues that no actual conflict exists here.

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

RESTATEMENT § 187. Washington clearly has a substantial relationship to the parties to the transaction. Subsection (2)(a) is not at issue. But, the parties dispute whether, under these facts and subsection (2)(b), the choice of law provision is void. To trigger this exception, we would have to conclude that (1) applying Washington law would be contrary to a fundamental California policy, (2) that California has a materially greater interest than Washington in this particular issue, and (3) that California law would otherwise apply under Section 188, i.e., California has the most significant relationship to the contract. See Erwin, 161 Wn.2d at 696. The Hosts bear the burden to demonstrate that all three prongs of section 187 are satisfied in order to prevail. See id. at 696-97, 699-700 (holding that the party seeking application of foreign law failed to establish all requirements of section 187(2)); see also Great Lakes Reinsurance (UK) PLC v. Durham Auctions, Inc., 585 F.3d 236, 242, 244 (5th Cir. 2009) (holding that the party seeking to invalidate a choice of law provision under section 187 did not meet its burden).

We first address the "materially greater interest" prong. RESTATEMENT § 187(2)(b). The Hosts argue that California has a materially greater interest than Washington in this particular issue, because California has a strong interest in ensuring that entertainers are not exploited by agents. Further, they argue that

9

California is interested in ensuring that talent agents who engage in conduct in California follow applicable California regulations. By contrast, Washington has no similar statute to protect talent from being exploited by agents.

Workhouse argues that California does not have a materially greater interest in enforcing this contract than Washington. The Hosts are not arguing that Workhouse exploited them, or did not perform the work contemplated by the contract. Rather, they are unhappy that the contract they signed with CBS in 2011 gave CBS the right to match a competing offer. Despite the lucrative result of the negotiations of the second contract, the Hosts preferred a different employer. They seek to invoke California law to avoid their contractual obligation to pay commissions under their contract with Workhouse for work Workhouse asserts was done in Washington.[6]

With respect to Washington's interest in this particular issue, Erwin is instructive. Cotter, a California corporation, argued that a contract with its real estate broker, Erwin, was void. 161 Wn.2d at 680, 681. Erwin, a Washington resident, had engaged in broker activities on behalf of Cotter in California without obtaining a California broker's license. Id. at 681, 697. Cotter refused to pay Erwin his contractual fee, and Erwin filed suit in Washington to collect. Id. at 684-85. The parties' contract selected Washington as the applicable law and venue. Id. at 690.

---

[6] Workhouse notes that Anderson is a Washington licensed attorney, but has not asserted that the contract is an attorney-client contract rather than an agent-talent contract.

The Supreme Court applied the section 187 analysis. Id. at 696. When addressing the "materially greater interest prong," the Court quoted the *Restatement*'s policy consideration that "'[g]enerally speaking, it would be unfair and improper to hold a person liable under the local law of one state when he had justifiably molded his conduct to conform to the requirements of another state.'" Id. at 699 (quoting RESTATEMENT (SECOND) CONFLICT OF LAWS § 6 cmt. g (1971)). "Likewise, '[p]redictability and uniformity of result are of particular importance in areas where the parties are likely to give advance thought to the legal consequences of their transactions.'" Id. (alteration in original) (quoting RESTATEMENT (SECOND) CONFLICT OF LAWS § 6 cmt. i (1971)). And, the Erwin contract was negotiated "between two highly experienced and successful business people who defined in advance the terms of their business relationship and explicitly chose Washington law." Id. The Court concluded that "Washington has a strong interest in providing Washington residents . . . with a forum for recovering compensation for services they render pursuant to a contract." Id. (emphasis added).

This reasoning is applicable here as well. Like in Erwin, Workhouse filed suit to collect commissions that the appellants owe pursuant to a contract. Erwin engaged in some business in California, but he "performed a good deal of work in Washington." Id. at 683-84. The Erwin court found that "California has no interest in this matter to the extent that Erwin seeks to collect fees for that work." Id. at 697. Here, Workhouse performed most of its work out of its Seattle office,

11

but made contacts with California. The Hosts' declaration does not dispute this.[7] Like in Erwin, "California has no interest in this matter to the extent that . . . [Workhouse] seeks to collect fees for that work" performed primarily in Washington.[8] Id.

In support of their arguments on the "materially greater interest" prong, the Hosts cite Sebert v. DAS Commc'ns, Ltd., No. TAC-19800 (Cal. Office of Labor Comm'r Mar. 27, 2012), http://www.dir.ca.gov/dlse/TAC/19800%20Kesha%20 Rose%20Sebert%20pka%20Ke$ha%20vs,%20DAS%20Communications,%20L TD..pdf [https://perma.cc/PDP3-PGF6]. In that case, Sebert, the singer popularly known as Ke$ha, filed a petition with the California Labor Commissioner alleging that her manager had violated the TAA. Id. at 1-2. Sebert was a California resident. Id. at 12. Although the talent firm was a New York corporation, "California was the hub of the activities that the parties engaged in under the

---

[7] Relying on internet research, the Hosts assert that Workhouse has an office in California. Workhouse asserts that this is a different entity: "Workhouse Creative." Whether Workhouse does or does not have an office in California makes no difference to our analysis because the Hosts do not provide any evidence that contradicts Workhouse's assertion that it performed primarily out of its Washington office.

[8] Erwin is distinguishable in some respects. In Erwin, the Court found that the contract clearly contemplated unlicensed activity, because Cotter agreed to waive his ability to contest fees based on Erwin's lack of a license in other states. 161 Wn.2d at 691-92. Moreover, the California law at issue in Erwin did not apply to out-of-state conduct even when it applied to California real estate. Id. at 697. Here, the contract appears to have contemplated out-of-state activity given that the Hosts agreed to reimburse Workhouse for travel expenses. But, the contract contained no provision addressing Anderson's lack of a license.

Due to these distinctions, we acknowledge that this case presents a closer question than Erwin. But, the similarities are such that we decline to depart from our Supreme Court's guidance in Erwin.

12

contract." Id. (emphasis added). The commissioner found that California had a materially greater interest in the issue than New York. Id. at 12-13.

However, Sebert was decided in the context of a dispute that Sebert initiated, claiming that Sebert's manager had violated the TAA. Id. at 1-2. Her manager was based out of California. Id. at 12. The meetings leading up to the agency contract took place in California. Id. But, here, Workhouse worked on behalf of the Hosts out of its office in Washington. It conducted the contract negotiations on behalf of the Hosts from its Washington office. Although Workhouse may have engaged in some activity within California, the record does not contradict Workhouse's assertion that most of its work was performed from Washington. Given Workhouse's physical presence in Washington, California was not the hub of the activities here.

This case is different from Sebert. No issue of exploitation of entertainers is presented. It is a straightforward contract collection case. Workhouse initiated a typical breach of contract suit to collect what it is owed under a contract. The Hosts invoke the TAA only as an obstacle to contractual obligations, not as a protection against predatory behavior. The Hosts do not dispute that they knowingly hired a Washington resident to work on their behalf. They do not dispute that the contract was entered into freely. They do not dispute that Workhouse performed work on behalf of the Hosts to procure the CBS contracts. They do not dispute that it negotiated on their behalf not once, but twice, resulting in very lucrative multi-year contracts. They merely seek to avoid paying

commissions due under their contract with Workhouse. The "particular issue" underlying this case is not whether Workhouse did or did not violate the TAA. See RESTATEMENT § 187(2)(b) (1971). The "particular issue" is whether to enforce the terms of the contract and order the Hosts to pay the commissions as agreed. See id.

And, as announced in Erwin, Washington has a "strong interest" in giving its residents a forum to collect under a freely negotiated contract where the parties justifiably conformed their conduct to Washington law, not California law. 161 Wn.2d at 699. We hold that the Hosts have not demonstrated that California has a materially greater interest than Washington on the issue of enforcing the compensation provision of this contract.

All three prongs of the section 187 test must be satisfied for the exception to apply. Id. at 696. We therefore need not address the "fundamental policy" and "most significant relationship" prongs. See id. We hold that the choice of law provision within the Hosts agency contracts selecting Washington law is valid and enforceable. Summary judgment was therefore properly granted.

III. Attorney Fees

The agency contracts award attorney fees to the prevailing party in an action to enforce the terms of the contract. A contract that provides for attorney's fees to enforce a provision of the contract necessarily provides for attorney's fees on appeal. Marine Enters., Inc. v. Sec. Pac. Trading Corp., 50 Wn. App. 768,

774, 750 P.2d 1290 (1988).  We therefore award attorney fees to Workhouse, subject to its compliance with RAP 18.1.

We affirm.

Appelwick, J.

WE CONCUR:

Trickey, ACJ

Cox, J.